𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

MORRISS, TRUSTEE, AND ALS. V. GARLAND'S ADM'R AND ALS.

December 13th, 1883.

1. WILLS—*Legacies—Construction.*—A legacy will not be held to be specific unless the intention in the will to make it so be clear. See *Corbin* v. *Mills*, 19 Gratt. 438.

2. IDEM—*Specific legacies.*—A specific legacy is the bequest of a particular thing or money, specified and distinguished from all others of the same kind, which would at once vest with the assent of the executor; it is a part of the testator's property itself, is a sacred and distinguished part of the whole of his property, and is liable to ademption.

3. IDEM—*Demonstrative legacies.*—A demonstrative legacy is one of quantity, with a particular fund pointed out for its satisfaction. It is so far general that if the fund be called in, or fail, the legatee will not be deprived of his legacy, but will receive it out of the general assets. It is so far specific that it is not liable to abate with general legacies upon a deficiency of assets.

4. IDEM—*Widow's renunciation of will—Case at bar.*—G died possessing large estate, consisting in part of about $350,000 of stocks and corporate bonds. By fifth clause of will he provides: "I will and direct my executors to set apart $50,000 worth, at par value, of my bank and other paying stocks and corporate bonds, paying at least six per cent. per annum, the interest or dividends whereof must be paid to my wife half yearly during her natural life, to be used as her own without accountability on her part. At her death the stocks, bonds, &c., to pass to C Y M in trust for the use of his wife, P B M, and her children, as separate estate." He left a widow, but no children. The widow renounced the will.

HELD:

1. The legacy given by this clause to the widow for life, and to M and her children after widow's death, is demonstrative, not specific.

2. Widow's renunciation of will gave her no right to one-half of any specific stocks or bonds as her absolute property. It gave her one-half, in value, of the surplus of the personal estate after paying funeral expenses, administration charges and debts. Code 1873, ch. 119, § 12.

3. Widow's renunciation will not disappoint testator's will and unsettle his disposition of his property further than may be necessary to enforce her rights. *Mitchell* v. *Johns*, 6 Leigh, 461.

4. Her renunciation devolves the interest and dividends on this $50,000 of stocks and bonds, into the general estate; that amount of stocks and bonds should be held, and the interest and dividends used to indemnify residuary legatees, out of whose legacies the stocks and bonds must be taken until full indemnification is made, or until the widow's death, whichever occurs first; and then the stocks and bonds should be conveyed to the trustee for M and her children, in accordance with the will.

5. IDEM—*Case at bar.*—In 1863 court below appointed commissioners to select and set apart the most valuable of the stocks and bonds to the amount of $50,000, and to assign one moiety thereof to the widow. In 1864 they reported that they had selected the bank stock and corporate bonds. The administrator had already distributed these stocks and bonds, one-half to the widow and one-half to the residuary legatees, and the bank stocks were soon after rendered worthless by the results of the war. The report was not acted on by the court, but disappeared soon after it was filed, and as soon as it reappeared in 1874, and M and her children had notice of it, they excepted to it, so far as it affected their rights, and so far as it was intended as a selection of the stocks and bonds mentioned in the fifth clause of the will.

HELD:

1. The administrator's distribution before the report was made does not preclude M and her children from excepting to the report.

2. The exception in 1874 does not come too late.

6. APPELLATE PROCEEDINGS—*Release of errors—Estoppel.*—Where a decree was entered in favor of plaintiff for less than he claimed, and defendant procured suspension of the decree with a view to appeal, and before appeal was had, plaintiff accepted from the defendant satisfaction of the decree, but without any agreement as to the appeal.

HELD: .

The acceptance by plaintiff of satisfaction of the decree is not a release or waiver of errors by him, and he is not thereby estopped from appealing from the decree. *Embry* v. *Palmer*, 107 U. S. 8.

Appeal of Charles Y. Morriss and Paulina B., his wife, and the first as trustee for the last and her children, from de-

cree of circuit court of the city of Lynchburg, rendered in November, 1877, in the suit of *Garland* v. *Garland*.

Opinion of Judge Hinton states the facts.

*Edward S. Brown* and *Joseph Christian*, for the appellants.

*J. A. Jones, O. G. Kean,* and *Kirkpatrick & Blackford,* for the appellees.

HINTON, J., delivered the opinion of the court.

The facts, pleadings, and proceedings necessary to be stated for a clear understanding of the questions to be decided are as follows, viz: In November, 1861, Samuel Garland, Sr., died, leaving a widow, but no children. He had, however, adopted his niece, Paulina B. Garland, who married Charles Y. Morriss, and towards her he stood, as the record amply shows, *in loco parentis.* He left a very large estate, consisting of lands, slaves, perishable property, and from $300,000 to $400,000 of the best paying stocks and corporate bonds in the country. His will was duly probated in the hustings court for the city of Lynchburg, on the 2d day of December, 1861.

The 5th clause of the will reads as follows: "5th. I will and direct my executors to set apart fifty thousand dollars' worth, at par value, of my bank and other paying stocks and corporate bonds, paying at least six per cent. per annum, the interest or dividends whereof must be paid to my wife half yearly during her natural life, to be used as her own, without accountability on her part. At her death the stocks, bonds, &c., to pass to Charles Y. Morriss, in trust for the use of his wife, our adopted daughter, P. B. Morriss, and her children, as separate estate. The slaves, in the 4th clause, to pass in the same way—as separate estate, and to

the same trusts." The 10th clause commences: "After the fulfillment of all the above and foregoing devises, I give," ·&c.

And in the 17th and last ·clause, the testator, after de-·claring his purpose not to die intestate as to any part of his present or future estate, makes Charles R. Slaughter and ·Samuel Garland, Jr., his residuary legatees, and appoints them his executors. They both qualified as such, but Charles R. Slaughter died soon afterwards, and John F. ·Slaughter qualified as his administrator.

On the 5th day of March, 1862, Mary L. Garland executed a deed formally renouncing the will, which deed was duly admitted to record. Shortly thereafter Samuel Garland, Jr., instituted this suit. In the original bill he stated that the widow had renounced the will; that the estate was very large, consisting in ·part of "stocks in various ·corporate companies, State and corporate bonds, which, with the debts due to him by individuals, amounts to about the sum of $400,000, estimating the stock, bonds, &c , at ·their par value"; "that there was nothing in the condition of the testator's estate to prevent the division of the real ·estate and slaves, and the distribution of not less than $200,000 of the stocks and bonds"; and he prayed that in making up one-half of the personal estate to the widow, the special legacies and the residuary legacy should be ratably abated.

Samuel Garland, Jr., died soon after this bill was filed, when John F. Slaughter qualified as his executor, and also as administrator *de bonis non* with the will annexed of Samuel Garland, Sr. The said John F. Slaughter was also ·appointed trustee for several special ·legatees, and he re-vived the suit, making himself a party in the various rela-tions he had assumed. The original bill and bill of reviver were answered by the appellants, who took the ground that .the renunciation of the will did not defeat or impair their

right in remainder after the widow's death; that her legacy fell into the residuum, and her half of the personal estate must be made up from the residuum; and that if contribution from special legacies should become necessary, those after the ninth clause should be exhausted before the preferred legacies could be touched.

During the year ending January 31, 1862, there was distributed by Charles R. Slaughter, as executor, to the deferred legatees, $36,000 of corporate bonds and stocks, paying at least six per cent. per annum. Soon afterwards, that is to say, during the year ending on the 16th September, 1863, John F. Slaughter, administrator *de bonis non*, c. t. a., sold stocks and bonds of the same character, amounting to the sum of $20,445, and applied the sum of $19,500, part thereof, to the payment of money legacies. The same administrator *de bonis non*, &c., distributed bonds and stocks of his testator amounting to the sum of $218,716, during the year ending September 16, 1864, and soon after, that is, between that date and January 26, 1865, $26,300, one-half to the widow and one-half to the residuary legatees.

On the 18th of November, 1863, the court decreed that commissioners should lay off and assign to the widow dower in the lands of her deceased husband; that commissioners should value the household and kitchen furniture, silver plate, &c., which the widow had agreed to take at valuation; that the administrator *de bonis non* pay her $10,000 and deliver to her certain railroad bonds, of the value of $24,000; then appointed commissioners, and ordered them to "select and set apart from all the stocks and securities (other than individual debts) belonging to the estate of Samuel Garland, deceased, the most valuable of said stocks and securities to the amount of $50,000, according to their face value, and to allot and assign over one moiety thereof to the said Mary L. Garland, and make report thereof to the court."

These commissioners, in their report, which was dated January 9, 1864, and filed February 24, 1864, reported that they had selected and set apart the following stocks and bonds:

| | |
|---|---:|
| Merchants Bank stock, | $20,000 |
| Citizens Savings Bank stock, | 8,000 |
| Bank of the Commonwealth stock, | 10,000 |
| Va. and Tenn. R. R. bonds, enlarged mortgage, | 12,000 |
| | $50,000 |

They said nothing more as to the disposition of the stocks and bonds. It appears as a fact, however, that the administrator *de bonis non* had on the 8th day of January, 1864, the day preceding the date of the report, distributed the bank stocks mentioned, half to the widow and the other half to the residuary legatees. Of the Va. and Tenn. railroad bonds, enlarged mortgage, he had distributed a much larger amount, half to the widow and the other half to the residuary legatees. The bank stocks soon became valueless. The railroad bonds were then and are now paying 8 per cent. per annum interest.

The report of the commissioners, from what cause the record does not disclose, lay in the office seemingly unnoticed until November 6th, 1874, when the appellants excepted to it so far as it might affect their rights, and so far as the action of the commissioners might be intended as a selection of the stocks mentioned in the fifth clause of the will, because the banks went into liquidation, and their stocks became worthless soon after the report was made, and they had no notice when the commissioners proposed to execute the decree.

The court overruled the exceptions of the petitioners, because the widow accepted the stock, when it was delivered to her, without objection, and its value had changed by the results of the war, and then decreed that the 5th

clause gave a *specific* legacy of $50,000 worth of the testator's bank and other paying stocks to the use of the widow for her life, and of the stocks themselves to the appellant, Paulina B. Morriss, and her children at the death of the widow; that by renouncing the will the widow took one half of the said stocks by a title paramount to that of the testator; and to compensate the appellant, Paulina B. Morriss, and her children for the loss of one-half of the legacy, they should now take the other half, with the interest or dividends thereon from the time of the widow's renunciation.

And the court further decreed, that John F. Slaughter, the personal representative of Charles R. Slaughter and Samuel Garland, Jr., the residuary legatees, should deliver to C. Y. Morriss, trustee, $6,000 of the bonds of the Virginia and Tennessee railroad company; and that he render an account of all money he had received on account of the Merchants Bank stock before and on its final settlement, and all the interest or dividends received by him on any of said bank stocks after the 9th day of January, 1864, the date of said report.

When the report of the amount received by the residuary legatees on the $6,000 of Virginia and Tennessee railroad bonds, and on the bank stocks, after the 9th of January, 1864, was made, the court, on the 20th day of November, 1877, decreed, "that the administrator *de bonis non* with the will annexed of Samuel Garland, Sr., dec'd, do transfer and deliver to Charles Y. Morriss, as trustee for his wife Paulina B. Morriss and her children, six bonds of one thousand dollars each of the six per cent. enlarged mortgage bonds of the Virginia and Tennessee railroad company, with the unpaid coupons thereon, which became due on the 1st day of January 1874, and the 1st day of July, 1877, respectively, and the eight per cent. bond and certificate of the same company for the sum of one thousand six hundred

and seventy seven dollars and sixty cents, on which the interest due the 1st day of January, 1874, and the 1st day of July, 1877, respectively, is unpaid ; and he shall deliver and transfer to the said C. Y. Morriss, as trustee as aforesaid, whatever evidence or security for the said last named interest he may have taken."

It also decreed that the " administrator . . aforesaid, out of the assets of his testator in his hands to be administered, if so much he hath, and if not, then out of his own proper goods and chattels, do pay to the said Charles Y. Morriss, as trustee aforesaid, the sum of $6,102.12, with interest on $4,435.10 from the 15th day of October, 1877, until paid, which bonds, certificates, coupons and money are to be received by the said trustee in full satisfaction of all claims of his wife, Paulina B. and her children, under the fifth clause of the will of Samuel Garland, Sr., deceased, in and to fifty thousand dollars in bonds and stocks given by said clause to the testator's wife for life, with remainder to the said Paulina B. Morriss and her children, and are to be held by the said Charles Y. Morriss in trust for the sole and separate use of his wife and her children, free from his debts or control, except as trustee aforesaid."

Whereupon, this appeal was taken. It brings up for review, and correction if erroneous, not only that decree but all of the previous decrees and proceedings in the case as well. *Burton* v. *Brown's Ex'ors*, 22 Gratt. 15.

The first important question to be determined is the character of the legacy given to the appellants in the fifth clause of the will. Is it specific or demonstrative ? A specific legacy has been defined the bequest of a particular thing or money, specified and distinguished from all others of the same kind, as of a horse, a piece of plate, money in a purse, stock in the public funds, a security for money, which would immediately vest with the assent of the executor. 1 Roper on Legacies, 190 ; 2 Lomax on Ex'ors,

69.   Its principal characteristics are that it is a part of the testator's property itself; that it is a severed or distinguished part of the whole of his property, and that it is liable to ademption.   L. R. 2 Eq. Cas. 309; 2 Wms. on Ex'ors, 1251; 2 Redf. on Wills, 431.

A demonstrative legacy is a legacy of quantity, with a particular fund pointed out for its satisfaction, and it is so far general and differs so much from one properly specific, that if the fund be called in or fail, the legatee will not be deprived of his legacy, but be permitted to receive it out of the general assets; yet is so far specific that it is not liable to abate with general legacies upon a deficiency of assets. 2 Lomax on Ex'ors, 70; 2 Wm. on Ex'ors, 1252; 2 Redf. on Wills, 137; *Corbin* v. *Mills,* 19 Gratt. 470; 3 Pomeroy's Eq. Juris., § 1133.   Now whilst it some times happens that there is difficulty in determining into which of these two classes of legacies a certain legacy falls, we can have no difficulty here.   Here the direction is to the executors to set apart not so many shares of a particularly described stock belonging to the testator, but "$50,000 worth, at par value, of my bank and other paying stocks, paying at least six per cent. per annum."   The testator left fifteen different kinds of stocks and bonds, of fifteen different values, and it is from out of this mass or aggregation of stocks and bonds, worth $350,000 at the least, that he, declining to designate any special stock, directs his executors, after his death, to select "$50,000 worth, at par value, . . . but paying at the least six per cent. per annum."   Such a legacy is clearly a demonstrative legacy according to all the authorities. And the circumstance that the testator used the word "my" in connection with his bank stocks in this clause of his will cannot affect the case; for whilst that word has been frequently fastened upon to fix the character of a legacy as specific, in cases where the particular stock out of which it was to come was also referred to, it can have no apprecia-

ble influence in a case like this, where the testator has not only not designated any particular stock as the stock out of which the legacy is to come, but, on the contrary, has grouped all of these securities together and given his executors the right to select any of them which paid as much as six per centum per annum in making up the $50,000 directed to be set aside under this clause of the will. *Parrot* v. *Worsfold,* 1 Jac. & W. 575.

In *Lambert* v. *Lambert,* 11 Ves. Jr. 607, the expression was, "I bequeath the sum of £12,000 of my funded property," and it was held not to be a specific legacy; for any funded property which he had would have answered the description. *Corbin* v. *Mills,* 19 Gratt. 470; *Tifft* v. *Porter,* 4 Seld. (N. Y.), 516; *Malone* v. *Mooring,* 40 Miss. 252.

If, however, I entertained a doubt as to the character of this legacy, I should feel constrained by the well-settled rule of construction, which has been fully recognized in this State, that a legacy will not be held to be specific unless there appears in the will a clear intention to make it so, to construe this legacy to be not specific but demonstrative. *Corbin* v. *Mills,* 19 Gratt. 438; *Skipwith and als.* v. *Cabell's Ex'or and als.,* 19 Gratt. 789. For this rule applies with peculiar force to a case of this kind, where the testator is providing an annuity for the wife of his bosom, and making a provision for an adopted child, with whose maintenance we may well presume he had charged himself. 2 Redf. on Wills, 146 n; 1 Pomeroy's Eq. Juris. § 556; 2 Redf. on Wills, 149.

The court therefore erred in holding, as it did by its decree of November 25, 1875, that Samuel Garland, by the 5th clause of his will, gave to his wife a specific legacy in the use and profits of his bank and other paying stocks to the amount of fifty thousand dollars for her life, and of the stocks themselves to Mrs. Morriss and her children after the death of Mrs. Garland.

The court likewise erred in holding, as it did in the same decree, that by the renunciation of the will by the widow "the testator's right to dispose of one-half of the stock, the subject of the said . . legacy, was abrogated and defeated, and that she became entitled to one half of this and all the other stocks held by the testator as her absolute property, and his estate became divested of it as completely as if it had been recovered against it by any other person by a right or title paramount to that of the testator; and that, consequently, one half of this . . legacy was thereby extinguished, destroyed, and annihilated, and the remainder to Mrs. Morriss and her children, as to one moiety, therefore failed and was defeated and adeemed." And it also erred in holding, as it did in the same decree, that the appellant, Paulina B. Morriss, "or her trustee for her, was entitled presently to receive the remaining moiety of said specific legacy to compensate her for her disappointment in failing to get the whole at the death of Mrs. Garland."

The renunciation of the will did not give the widow one-half of any specific stocks or bonds. It simply gave her one-half in value of the surplus of the personal estate, after the payment of funeral expenses, charges of administration and debts, as a mere glance at the statutes bearing on the subject will show. Section 12, ch. 119, Code 1873, shows that on the renunciation of the will the widow became entitled to "such share of her husband's personal estate, as she would have had if he had died intestate." And section 10 of the same chapter provides that "when any person shall die intestate as to his personal estate, or any part thereof, the surplus, after the payment of funeral expenses, charges of administration and debts, shall pass and be distributed . . . as follows:

"If the intestate leave a widow, but no issue by her," which is the case here, "the widow shall be entitled absolutely to such of the personal property, in the said surplus

as shall be acquired . . by the intestate, in virtue of his marriage with her, and remain in kind at his death; she shall also be entitled, if the intestate leave issue by a former marriage " (here there was none), " to one-third; if no such issue, to one-half of the residue of such surplus." The widow in this case brought no stocks or corporate bonds to the marriage, and having surrendered the provision made for her by the will, she took her share in the estate under the law—one half in value of the surplus—which she took, not because she had a paramount title to it, but because the law in this event of a renunciation of the will gives the widow a share of her husband's estate because it is his. As, however, there is nothing in the record to suggest that she has received more than her due share of the personal estate of her deceased husband, it is not intended that anything here said shall in any wise affect her. Her renunciation of the will, however, throws back the interest or dividends on the $50,000 worth of stocks and bonds, which was, by the fifth clause of the will, to be paid to her, by the executors, semi-annually, during her life, into the general estate. In *McReynolds* v. *Counts*, 9 Gratt. 242, Joseph McReynolds had devised his lands to his widow for life, with remainder to Isaac McReynolds. The widow renounced the will. The court said, " the waiver and renunciation placed the widow in precisely the same condition she would have occupied if her husband had died without a will;" and at page 245 of the report it is said " that the rents and profits on the two thirds remaining, after the assignment of dower, should be applied, as far as necessary, to indemnify the legatees who are disappointed, and after full indemnification, or after the death of the · widow, whichever shall first occur, the lands shall go to Isaac Mc-Reynolds." *Mitchells* v. *Johnson*, 6 Leigh, 461; *Lady Cavan* v. *Putteney*, 2 Ves. Jr. 559; *Green* v. *Green*, 19 Ves. Jr. 669; *Lewis* v. *King*, 2 Bro. C. C. 603.

From what has been already said it will be seen that the circuit court also erred in holding that the remainder to the appellant, Paulina B. Morriss, and her children as to one moiety of the $50 000 worth of stocks and corporate bonds mentioned in the fifth clause, was " extinguished, destroyed and annihilated" by what the court calls the "paramount title" of the widow, and that to that extent, to again use the language of the decree, the "legacy to them had failed, and was defeated and adeemed." The renunciation of the will by the widow will not be permitted to disappoint the will of the testator and to unsettle his scheme for the disposition of his property further than may be absolutely necessary for the enforcement of her rights. *Mitchell* v. *Johnson*, 6 Leigh, 461. The interest and dividends therefore which shall accrue on the fifty thousand dollars worth of stock and bonds hereinafter directed to be set aside and held by the court, will be sequestrated and paid over until full indemnification is made to the residuary legatees or until the death of the widow, whichever shall first occur, when the stock and bonds themselves shall be conveyed to C. Y. Morriss or some other trustee to be held as the separate estate of the said Paulina B. Morriss and her children, in accordance with the manifest intention of the testator.

It is said, however, that the court by its decree of November 18th, 1863, appointed commissioners to select and set apart " the most valuable of said stocks and securities to the amount of $50,000, according to their face value, and to allot and assign over one moiety thereof to the said Mary L. Garland." That these commissioners reported on the 24th February, 1864, that they had selected the bank stocks and certain corporate bonds. That the administrator had previously distributed these bank stocks and corporate bonds, one-half to the widow and one-half to the residuary legatees. And that the bank stocks were soon thereafter

rendered valueless by the results of the war. And it is argued that this distribution by the administrator before the report was made precluded the appellants from excepting to that report. But this is clearly not so. For, assuming for the purposes of the argument, that it was the purpose of both the administrator and the court to execute the fifth clause of the will, yet what they could not possibly tend to accomplish that object, because the widow having renounced the will was not entitled to the stocks and bonds mentioned in that clause, and was not even entitled to any interest or dividends thereon.

It is insisted, also, that the appellants delayed too long before excepting to that report, and will not now be heard to object to it. To this we cannot assent. It is true that report was filed on the 24th February, 1864, and was not excepted to until the 6th November, 1874. But it is also true that the report disappeared for some time after it was filed, having been in all likelihood misplaced during the confusion incident to the war, and that as soon as it came to light and the appellants had learned of its existence they excepted to it. If, however, this were not so, it has been usual, under our practice, to allow exceptions to be taken to a report at any time before the case is heard on it, and in a case like the present one, where to adopt a different course would be to defeat the intentions of the testator, we think that practice ought to be adhered to. Code 1873, ch. 128, § 28.

It was suggested at bar that the decree of November 20, 1877, had been executed so far as these appellants are concerned, and that the money and bonds directed thereby to be paid them had been paid to them, and we were asked in the event of a reversal of that decree to take an account of that fact in our decree, but after careful consideration we think it is safer and more in conformity with the established practice in such cases to leave that matter to the

lower court for its action, which is armed with ample powers to require restitution of the appellants of what has been received by them.    *White* v. *Jones*, 1 Wash. 118 ; *Erwin* v. *Lowry*, 7 Howard, 183.

We are of opinion that such portions of the decrees of November 18, 1863, November 25, 1875, and November 20, 1877, as are in conflict with the views herein expressed are erroneous and must be reversed and annulled, and the residue thereof must be affirmed.    And that this cause must be remanded to the circuit court of the city of Lynchburg, with directions to set apart $50,000 worth, at par value, of good stocks and bonds paying at least six per centum per annum interest, or dividends, and hold the same until the death of the said Mary L. Garland, when they must be conveyed to the trustee of the appellant, Paulina B. Morriss, and her children, as required by the will, and that in the meanwhile the interest and dividends accruing on said stock and bonds shall be applied so far as may be necessary to the indemnification of the residuary legatees out of whose legacies these stocks and bonds must be taken.

RICHARDSON, J., dissented.

The decree was as follows :

This day came again the parties, by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing, and filed with the record, that the fifth clause of the will of Samuel Garland, Sr., deceased, did not give to his wife, Mary L. Garland, a specific legacy in the use and profits of his bank and other paying stocks to the amount of fifty thousand dollars for her life, and of the stocks themselves to Paulina B. Morriss and her children, after the death of his wife,

as separate estate, but that on the contrary the said bequests were demonstrative; that is to say, they were general legacies, payable out of the general assets, but with an appropriation of certain subjects as the primary fund for their satisfaction.

The court is therefore of opinion that the decree of 25th November, 1875, is erroneous in holding that Samuel Garland, Sr., by the fifth clause of his will gave to his wife a specific legacy in the use and profits of his bank and other paying stocks to the amount of fifty thousand dollars for her life and of the stocks themselves to Mrs. Morriss and her children after the death of Mrs. Garland; and that said decree is also erroneous in holding that by the renunciation of the will by the widow the remainder to Mrs. Morriss and children in and to one moiety of the stocks and bonds "was extinguished and destroyed" and "defeated and adeemed."

The court is further of opinion that said decree is also erroneous in holding that the appellant, Paulina B. Morriss, or her trustee for her, was entitled presently to receive the remaining moiety of said specific legacy to compensate her for her disappointment in failing to get the whole at the death of Mrs. Garland.

The said court also erred in its decree of 20th November, 1877, in decreeing "that John F. Slaughter, adm'r *de bonis non* with the will annexed of Samuel Garland, Sr, deceased, do transfer and deliver to Charles Y. Morriss, as trustee for his wife, Paulina B., and her children, six bonds of one thousand dollars each of the six per cent. enlarged mortgage bonds of the Virginia and Tennessee Railroad Company, with the unpaid coupons thereon, which became due on the 1st day of January, 1874, and the 1st day of July, 1877, respectively, and the eight per cent. bond and certificate of the same company for the sum of one thousand six hundred and seventy-seven dollars and sixty cents, on which

the interest due the 1st day of January, 1874, and the 1st day of July, 1877, respectively, is unpaid, and he shall deliver and transfer to the said C. Y. Morriss, as trustee as aforesaid, whatever evidence or security for said last named interest he may have taken."

And it also erred in decreeing "that the said John F. Slaughter, as administrator as aforesaid, out of the assets of his testator in his hands to be administered, if such he hath; and, if not, then out of his own proper goods and chattels do pay to the said Charles Y. Morris, as trustee aforesaid, the sum of six thousand one hundred and two dollars and twelve cents, with interest on four thousand four hundred and thirty-five dollars and ten cents from the 15th day of October, 1877, until paid, which bonds, certificates, coupons and money are to be received by the said trustee in full satisfaction of all claims of his wife, Paulina B., and her children, under the fifth clause of the will of Samuel Garland, Sr., deceased, in and to fifty thousand dollars in bonds and stocks given by the said clause to the testator's wife, for life, with the remainder to the said Paulina B. Morris and her children, and are to be held by the said Charles Y. Morriss in trust for the sole and separate use of his said wife and her children, free from his debts or control, except as trustee as aforesaid."

Therefore it is decreed and ordered that so much of the decrees of the said circuit court of November 18th, 1863, November 25th, 1875, and November 20th, 1877, as are in conflict with the views herein declared, be reversed and annulled, and in all other respects affirmed, and that the appellee, John F. Slaughter, administrator with the will annexed of Samuel Garland, Sr., deceased, out of the estate of his said testator in his hands pay to the appellants their costs by them expended in the prosecution of their appeal aforesaid here; and it being suggested that the appellants have been paid the money and bonds decreed them by the

decree of 20th November, 1877, it is remitted to the circuit court of the city of Lynchburg to make such order as may be necessary for the restitution of all of said property.

And this cause is remanded to the said circuit court with directions to set apart $50,000 worth, at par value, of good stocks and bonds, paying at least six per cent. per annum interest or dividends, and hold the same until the death of the said Mary L. Garland, when they must be conveyed to the trustee of the appellant, Paulina B. Morriss, and her children, as required by the will, and that in the interim, the interest and dividends accruing on said stocks and bonds shall be applied, as far as may be necessary, to the indemnification of the residuary legatees, out of whose legacies the stocks and bonds must be taken, and for further proceeding to be had therein, in conformity with the opinion aforesaid and this decree

Which is ordered to be certified to the said circuit court of the city of Lynchburg.

DECREE REVERSED.

On a rehearing—March 20, 1884,

LACY, J., delivered the opinion of the court.

The rehearing awarded in this case was general, and all the questions involved have been argued. The appellees have, however, admitted that the legacy described in the 5th clause of Samuel Garland's will is not a specific legacy ; that the renunciation by Mrs. Garland of her husband's will did not entitle her to any specific property, and the acceptance by Mrs. Garland, without objection, of the stock and bonds allotted under the 5th clause of the will did not preclude the appellants from excepting to the report of the commissioners who made the allotment.

The first question raised by the appellee is as to the effect on this appeal of the appellants having voluntarily accepted the bonds, certificates, coupons, and money decreed to them by the decree here appealed from. After the decree of November, 1877, in the month of Februry, 1878, a settlement was had between the parties, and the counsel for Mrs. Morriss, trustee, executed the following receipt, which is filed with and by order of this court made a part of the record in this case, and is as follows :

"Received of John F. Slaughter, administrator *de bonis non* with the will annexed of Samuel Garland, Sr., dec'd, the sum of six thousand four hundred and thirty dollars and thirty-five cents, in full of the sum of money decreed to be paid to Charles Y. Morriss, as trustee for his wife, Paulina B., and her children, by a decree pronounced in the circuit court of Lynchburg, at the November term, 1877, in the case of *Garland's Ex'or* v. *Garland and others,* with interest up to this date; and also of the interest due July the 1st, 1877, on the bonds and certificates of the Virginia and Tennessee Railroad Company, in the said decree mentioned, which interest was collected after the account rendered in the said case before Commissioner Manson. Received, also, the six bonds for one thousand dollars each of the enlarged mortgage of the Virginia and Tennessee Railroad Company, bearing six per cent. interest, with the coupons falling due on the 1st of January, 1878, and from that time forward attached; also, fifteen hundred dollars in the eight per cent. bonds of the said railroad company, given for past due coupons in 1869, with the coupons due the 1st of January, 1874, and the 1st of January, 1878, and from thence forward, attached (the interest due the 1st day of July, 1877, having been collected by the said Slaughter, and accounted for in the sum above specified); which bonds are received in discharge of the bonds and certificates of the Virginia and

Tennessee Railroad Company, decreed to be transferred to said Charles Y. Morriss, trustee as aforesaid, except as to the amount of one hundred and seventy-seven dollars and sixty cents in the eight per cent. certificates of said company for deferred interest, on which the interest due the 1st of January, 1874, is unpaid. On the said balance the interest due the 1st of July, 1877, is settled in the sum first above specified, but interest due the 1st of January, 1878, is still unpaid.

"EDWARD S. BROWN,
" *Attorney for Charles Y. Morriss, trustee for Paulina B. Morriss and her children.*"

By this receipt, it is claimed by the appellees that the appellants released all errors in the decrees appealed from; that they are thereby estopped from seeking to disturb said decrees; that they have thus made a deliberate election, and a binding bargain on good and sufficient consideration.

This question in this form has not before arisen before this court, and is in this case a question here of first impression. But it has been often the subject of consideration and judicial decision in other States and in other courts.

In the supreme court of the United States, in the recent case of *Embry* v. *Palmer*, 107 U. S. R. p. 8, Mr. Justice Matthews, in delivering the unanimous opinion of the court, said: "A suggestion is made in argument that Embry is estopped to prosecute this writ to the reversal of the decree below, because it appears that the amount of money ordered by it to be paid to him as a condition of relief granted, has been accepted by him. It is said that this is a release of errors. Without entering upon a discussion of the general question, it is sufficient for the present purpose to say that no waiver or release of errors, operating as a

bar to the further prosecution of an appeal or writ of error, can be implied, except from conduct which is inconsistent with the claim of a right to reverse the judgment or decree which it is sought to bring into review. If the release is not expressed, it can arise only on the principle of an estoppel. The present is not such a case. The amount awarded, paid, and accepted, constitutes no part of what is in controversy. Its acceptance by the plaintiff in error cannot be construed into an admission that the decree he seeks to reverse is erroneous; nor does it take from the defendants in error anything, on the reversal of the decree, to which otherwise they would be entitled, for they cannot deny that this sum at least is due and payable from them to him. But in every point of view the objection is met and answered by the decision of this court in the case of *United States* v. *Dashiel*, 3 Wall. 688."

In that case, p. 697, the court said: "Defendants move to dismiss the case because it appears by the record, as they allege in the motion, that the judgment in the court below was in favor of the plaintiffs, and that before suing out the writ of error, they obtained satisfaction of the judgment by execution and sale."

In that case satisfaction of the judgment was only in part, and the partial satisfaction seems to have entered into and influenced the decision of the court, and three judges dissented. The court held: "Where a writ of error is taken to the appellate court by a plaintiff below who previously to taking the writ issues execution below and gets a partial but not a complete satisfaction on his judgment, the writ will not, in consequence of such execution merely, be dismissed."

In the case of *Erwin* v. *Lowry*, 7 Howard U. S. R. 184, the amount of the judgment was paid to the sheriff in August, and paid by the sheriff to the creditor and appellant Erwin in November, 1844. The writ of error was sued out

in May, 1845, and there accompanied the record an assignment of errors. The defendant asked to have the writ of error dismissed on the production of a copy of Erwin's receipts to the sheriff, on the ground that by receiving the money, Erwin released the errors complained of

The court held that the motion came too late to be heard, but that if it could be heard it was no bar. The court said " the proceeding was of a mixed character, partaking more of the nature of a proceeding in equity than one of law, and although it can only come here by writ of error, yet this does not change its character. A writ of error in equity proceedings is not peculiar. . . . And we take the rule to be that although a decree in equity is fully executed at the instance of the successful party, he cannot complain of his own voluntary acts, if he does perform a condition imposed on him before he can have the fruits of the decree, although the other derives a benefit from such performance. If it was otherwise a writ of error in such a case as the present, or an appeal in equity, might be defeated after the writ of error or the appeal was sued out, where there was no supersedeas, and here there was none.

Five years is the time allowed for prosecuting appeals to and writs of error out of this court, and in many cases decrees and judgments are executed before any step is taken to bring the case here ; yet in no instance within our knowledge has an appeal or writ of error been dismissed on the assumption that a release of errors was implied from the fact that money or property had changed hands by force of the judgment or decree. If the judgment is reversed . . . it is the duty of the inferior court . . to restore the parties to their rights."

We have been referred to numerous authorities on the other hand from many other States of the Union, which hold that to accept the benefits of a decree is in effect to release errors, and to enforce the collection of the sums de-

creed to be paid is a bar to the appeal—that to enforce the judgment by execution, and to receive payment of the same, extinguishes the judgment, and there is nothing left to base an appeal upon.

The learned and industrious counsel for the appellees have presented to the court an imposing array of well considered cases from the highest courts of other States on this subject, and sustaining this view, and they commanded the earnest attention and best consideration of this court, but we are compelled to withhold from them our sanction. They do not seem to be based upon sound principles of justice. It does not seem to us to be right to permit the lower courts to put upon litigants terms of constraint which shall operate under the shadow of their necessities to deprive them of the right to bring their cause to this the tribunal of last resort established by the constitution of the State for the correction of errors

To do so might and doubtless would operate in many cases, as it would in this, in hardship and oppression upon those most dependent upon the courts of the country for their protection. In this particular case, the amount received was accepted, as appears, with the understanding on the part of the appellant that the appeal was to go on. The administrator had announced his purpose to appeal, and had procured a suspension of the decree to that end, and there was certainly no agreement or understanding of compromise by which it was agreed to release errors, and we think there is no rule of law which effects that end. We think the unanimous opinion of the supreme court of the United States, in the late case of *Embry* v. *Palmer*, cited above, is well reasoned, and is founded upon sound principles of justice, and we prefer to rest our decision upon the principles there laid down in the cases there cited.

There are other questions raised in the argument of the learned counsel of the appellees, but we think they are all

sufficiently disposed of in the well considered opinion of this court, delivered by Judge Hinton on the first hearing, and it is not necessary to review them here. We see no just ground of objection to that opinion upon any of the questions therein considered. And we are of opinion that the decree of the circuit court of Lynchburg must be reversed, for the reasons set forth therein.

RICHARDSON, J., dissented.

FORMER OPINION AFFIRMED.