## Richmond.

### HOOD v. HADEN.

#### DECEMBER 2d, 1886.

1. WILLS—*Construction—Power of appointment.*—H., by his will in 1869, says: "I give my wife all my property in fee simple, to be held by her without division during her life, only using or dividing the income from crops or interest received at any time before her death; at her death to leave to our children such sums or portions as the circumstances then existing may, in her estimation, think it best to do."

HELD:

    1. The *corpus* was to be held by her intact during her life, and divided at her death, not before.

    2. Her power of appointment could be executed only by her will.

    3. All appointments to take effect out of the *corpus* during her life, were void.

    4. Her power of appointment could not be delegated to another.

    5. She could appoint without allusion to her power of appointment, the act showing that the appointment was of the same subject over which her power was.

    6. She had but an estate for her life, with power of appointment to the specified objects.

2. RULE IN SHELLEY'S CASE—*Construction of statutes.*—The statute essaying to abolish this rule, applies only where the grantor or testator is competent to, *and does* vest in the heir a remainder in fee-simple after an estate for the ancestor's life. Code 1849, ch. 146, sec. 11.

3. WILLS—*Power of appointment—Execution.*—Mrs. H., by her will in 1879, in evident execution of her power under her husband's will, says: "I devise to my son, R., the upper half of the home place, during his life, remainder to the lawful issue of his body forever. If R. die without such issue, he is hereby clothed with power to appoint one of my children or grandchildren as his devisee, and I give the upper half to such appointee"—

HELD :

    1. Delegation of power to R. was void.

    2. Power to appoint children did not authorize Mrs. H. to appoint others, and the appointment to R.'s issue did not vest the remainder.

    3. Statute essaying to abolish rule in *Shelley's Case* does not apply to R.'s case ; and under the appointment of Mrs. H., R. took a fee simple in the upper half, by implication and under that rule. Code 1873, ch. 112, sec. 11.

4. LEGACIES—*Specific—Ademption—Revocation.*—Legacies are specific when testator intends legatee to have the identical thing bequeathed —*e. g.,* "five thousand dollars of *my* Virginia registered State bonds." If that thing forms no part of testator's estate at his death, then the specific legacy thereof is adeemed. And a subsequent inconsistent will, of course, revokes the previous legacy.

5. SEALED INSTRUMENTS—*Construction—Case at bar.*—In 1871 Mrs. H. executed an instrument in these words : " After my death, for value received, I bind my heirs, executors, etc., to pay to my daughter, Francis E. Hood, the just and full sum of five thousand dollars of my Virginia registered State bonds. As witness my hand and seal this 16th day of September, 1871. E. C. HADEN. [SEAL.]" Mrs. H. had no such bonds, except sôme that came to her under her husband's will, and disposed of them in her lifetime ; and by her will in 1879, inconsistently with this instrument, disposed of the whole estate. Mrs. Hood contended that this instrument was a testamentary act. The circuit court held it was a common law obligation. On appeal here—HELD :

    1. It is in the form of a common-law obligation.

    2. But if it were a testamentary act, the specific legacy thereby given Mrs. Hood was adeemed by the disposition of those bonds by Mrs. H. during her life, and was revoked by the inconsistent disposition made by her will of 1879 of the whole estate.

6. REVERSION—*Sale for partition—Land damages—Case at bar.*—Supposing R. and W. took only life estates in home place, and that their father was intestate as to the reversion, a sale thereof was decreed in order to partition it among R. and W. and another heir entitled to participate in his estate ; and the R. & A. Railroad Co., having had part of the home place condemned for its purposes, the land damages were paid, or payable in court.

    HELD :

    1. The decree of sale of said reversion was erroneous, as R. and W. were the fee-simple owners of the home place.

2. The land damages belong to R. and W. as the owners of the fee-simple.

Argued at Staunton. Reargued and decided at Richmond.

Appeal from decree of circuit court of Botetourt county, rendered June 28, 1884, in the cause of E. C. Haden's executor against E. C. Haden's legatees, and the cross-cause of J. M. Hood and wife against E. C. Haden's executor and others. The decree of the circuit court being adverse to Mrs. Hood and husband, they appealed to this court.

Opinion states the case.

*J. H. H. Figgat* and *Bradley T. Johnson*, for the appellants.

*Haden & Haden*, and *Edmund Pendleton*, for the appellees.

LEWIS, P., delivered the opinion of the court.

On the 17th of October, 1869, Richard G. Haden, of Botetourt county, died testate, leaving a large and valuable estate. His will, among other things, contains a clause as follows: "I give to my wife, Eloise C. Haden, all my property of every kind, in fee-simple, to be held by her without division during her life, only using or dividing the annual income from crops or interest received at any time before her death. At her death to leave to our children such sums or portions as the circumstances then existing may in her estimation think it best to do."

This language clearly shows three things: 1. That testator intended the *corpus* of the estate to be held intact by his widow during her life; 2. That at her death, and not before, it should be divided; and 3. That he meant the power of appointment to be executed by will only. The provision was evidently intended for the widow's benefit, and to protect her against her

own acts. It doubtless occurred to the testator that by restraining a disposition of the property except by will, which is in its nature revocable, she would, to the end of her life, retain the influence over, and secure the respect of, the several objects of his bounty, which he intended her to have—a result less likely to be accomplished if power were given her to dispose of the property by deed or other irrevocable act to take effect in her lifetime.

It doubtless also occurred to him that changes might take place in her lifetime, not only in the value of the estate, but in the circumstances and wants of the objects of the trust (as in fact has happened), and that what might be an equitable division at one time would, under a change of circumstances, be inequitable at another. Hence, in unmistakable terms, he directed the *corpus* of the estate to be held by the widow to be divided at her death as, according to the circumstances *then* existing, she might think proper. No power is anywhere given· in the will to dispose of more than the income or interest by act to take effect in her lifetime. The principal she could only *leave* as the will directs.

It is true, the testator says in a subsequent clause of the will, that "sums of money will be necessary to use in finishing the education" of his children and to pay debts. But this language, taken in connection with the clause directing the property "to be held without division," merely shows that he supposed "the annual income from crops or interest received" would be ample to meet all demands upon the estate, including a maintenance for the widow and family. And this view is strengthened by another clause of the will in which he says: "My wife will have much to do" in the management of the estate, "sufficient to exercise all her prudence and untiring energy," etc., thus again manifesting his intention that the property should be kept together "without division" until her death.

But giving to the will the most liberal construction possible, it clearly does not authorize a disposition of any portion of the principal of the estate before her death, unless necessary for the payment of ·debts or the education of the children. And hence it follows that all attemped appointments by her out of the principal to take effect in her lifetime were unauthorized and void.

Upon this point the law is very exact, and the cases uniformly hold that all the forms and conditions annexed to the exercise of a power must be strictly complied with. Thus, if a deed be required, the power cannot be executed by a will, and if a will be required, that mode alone will suffice. *Freeman* v. *Eacho*, 79 Va. 43. In *Doe* v. *Thorley*, 10 East, 438, a testator devised certain land to his wife for her life, "and also at her disposal afterwards to *leave* to whomsoever she pleases." It was held by the court of King's Bench that this gave her power to dispose of the land by will only, and, therefore, that a disposition of it by feoffment in her lifetime was void. "The word *leave*," said Lord. Ellenborough, "as applied to a disposition of property emphatically means *by will*." See also *Carr* v. *Effinger*, 78 Va. 197.

Nor was the testator, Richard G. Haden, less explicit in designating the objects of his bounty. Though the language of the will is, "I give to my wife all my property of every kind in fee-simple," etc., yet it is clear from the language immediately following that she was entitled to nothing more than the beneficial enjoyment of the property during her life, with power to *leave* it, at her death, as directed by the will— that is, to their children and the children of their deceased daughter, Josephine Penn, excepting only their daughter, Mrs. Mary J. Reynolds. *Knight* v. *Yarbrough*, Gilm. 27; *Harrisons* v. *Harrison*, 2 Gratt. 1; *Morgan* v. *Fisher*, 10 Va. L. J. 692. The testator says: "I have advanced to Mary J. Rey-

nolds, wife of C. M. Reynolds, as much of my estate as she is to have. * * I have made advances to Martha J. Claiborne, wife of Wm. C. Claiborne, and to Josephine Penn, during her life, which are known to my wife, and which she can take into estimation in making further advances to said Martha J. Claiborne, or the children of our deceased daughter Josephine Penn."

Upon these points there is no serious dispute. The real controversy arises out of the will of Mrs. Haden, and a certain paper writing, signed and sealed by her, bearing date September 16th, 1871.

She died on the 10th of December, 1879, and· by her will, dated November 24th, 1879, she appointed the land devised by her husband to their three sons, Richard G., William W., and Benjamin Haden. To the first two she appointed the "Home Place" for their. lives, and. at their death to the heirs of their bodies, &c. To their daughter, Mrs. Mary J. Reynolds, she gave five hundred dollars of a claim belonging to the trust estate "on the State of West Virginia." To their grandson, Stuart B. Penn, a son of their deceased daughter, Josephine Penn, she gave seventeen hundred dollars of the same claim, and thirty-six hundred dollars of the bonds of the James River and Kanawha Canal Company. To their granddaughter, Letitia C. Claiborne, she gave a legacy of one hundred dollars. And to their daughters, Mrs. Martha J. Claiborne and Mrs. Florence E. Hood, she gave each a legacy.

It. is conceded that as an appointment under the will of Richard G. Haden, deceased, the will of Mrs. Haden, so far as it gives legacies to Mrs. Reynolds and to Letitia C. Claiborne, is void, the former being expressly, and the latter impliedly, excluded from the benefit of the trust by the provision of his will above quoted. It is also conceded that as there are two children of Mrs. Josephine Penn, namely, Stuart B. and

Richard H. Penn, it was the duty of Mrs. Haden, in executing the power, to provide for both. *Knight* v. *Yarbrough, supra.* This, however, appears to have been arranged by consent of parties in the court below, by equally dividing the legacy to Stuart B. Penn between the two.

In other respects, the will of Mrs. Haden is a valid execution of the power of appointment conferred upon her. It is true she makes no reference in her will to the will of her deceased husband by which the power was created. It is also true that she mentions the property disposed of as though it were her own absolutely. Thus she says, "I devise *my* body of land"; "I bequeath *my* horses"; "*my* household and kitchen furniture"; "*my* law library, &c. But the property disposed of was the subject of the power, which manifests her intention to execute the power. In *ex parte* Caswall, 1 Atk. 559, Lord Hardwicke held that a man may execute a power without reciting, or taking the least notice of, the power, provided the act shows that he had in view the subject of the power. And such is the settled law. Besides, it does not appear that, at the time of her death, Mrs. Haden was seized, or possessed of any estate other than the subject of the power, and, therefore, her will could have no operation without the aid of the power. "A will," says Chancellor Kent, "need not contain express evidence of an intention to execute a power. If the will be made without any reference to the power, it operates as an appointment under the power, provided it cannot have operation without the power." 4 Kent's Comm. 334. See also 1 Sudg. on Pow. 382; 2 Min. Inst. (3d ed.), marg. p. 742,

This being so, the next question is as to the effect of the appointment of the "Home Place" to Richard G. and William W. Haden.

The language of the will is as follows: "I will and devise unto my two sons, Richard G. Haden and William W. Haden,

during their lives, the tract of land on which I now reside, known as the 'Home Place,' to be equally divided between them. Richard G. Haden is to have the upper half during his natural life, and after his death, I give and devise the same upper half to the issue of his body lawfully begotten forever. And William W. Haden is to have the lower half of the 'Home Tract' during his natural life, and after his death, I will and devise this same lower half of the 'Home tract' to the issue of his body lawfully begotten. If Richard G. Haden should die without issue of his body lawfully begotten, then he is hereby clothed with the power of appointing by will and last testament, duly signed and attested by two competent witnesses, one or more of my children or grandchildren to be his devisee or devisees, and to such appointee or appointees I give and devise the upper half of the 'Home Tract' of land."

And then follows a similar provision in respect to William W. Haden and the lower half of the same tract.

It is hardly necessary to say that this clause of the will is ineffectual to confer upon the appointees therein mentioned the power of appointment conferred upon Mrs. Haden by the will of her husband. A power of appointment, where a trust and confidence is reposed in the donee, is personal to the donee, and cannot be delegated. Nor will a power to appoint to children authorize an appointment to grandchildren or other persons, unless a contrary intention appears from the instrument creating the power; for *cujus est dare ejus est disponere. Morris* v. *Owen,* 2 Call, 438; *Hudsons* v. *Hudson,* 6 Munf. 352; *Knight* v. *Yarbrough, supra;* 4 Kent's Comm. 345.

The question, then, is, what estate do the appointees, Richard G. and William W. Haden, take in the "Home Place?" The appellants contend that they take life estates only, and that except as to the life estates therein, the land is unappointed. On the other hand, the appellees contend that they each take a fee-simple.

The latter view is undoubtedly the correct one, unless the case is within the operation of the statute abolishing (partially at least) the rule in *Shelley's Case.* That statute took effect on the 1st day of July, 1850, and enacts as follows: "Where any estate, real or personal, is given by deed or will to any person for his life, and after his death to his heirs, or to the heirs of his body, the conveyance shall be construed to vest an estate for life only in such person, and a remainder in fee-simple in his heirs, or the heirs of his body." Code 1873, ch. 112, sec. 11.

But does this statute apply to the present case? We think it does not. It applies, as its terms plainly indicate, only where a remainder is vested in the heirs of the first taker; that is, where it is competent for the grantor or testator, as the case may be, to vest in the heirs a remainder in fee-simple after an estate for the ancestor's life, *and does so.* But here, while it was competent for Mrs. Haden to appoint the land to any one or more of *the objects of the trust*, and in fee-simple if she pleased, her power was confined to appointing it to or amongst them only. Hence her appointment of the land, in so far as the heirs of the appointees are concerned, was in excess of her power and void, because they can never be objects of the trust created by her husband's will. The cases of *Morris* v. *Owen, Hudsons* v. *Hudson,* and *Knight* v. *Yarbrough, supra,* are conclusive upon this point. And upon the principles settled in those cases, it is clear that the present case cannot be brought within the provisions of the statute above mentioned.

It must, therefore, be decided in accordance with the law as it was in Virginia the day before that statute took effect. And this being so, the appointees, Richard G. and William W. Haden, each take by implication, and by the rule in *Shelley's Case*, an estate tail, which by the statute abolishing entails is converted into a fee simple. Code 1873, ch. 112, sec. 9.

In *Ball* v. *Payne,* 6 Rand. 73, a testator devised certain land to his son for life, and provided that "in case he shall have heirs lawfully begotten, he shall or may dispose of the said land to either, or amongst the said heirs, as he shall think proper; but in case my son shall die without such heirs, then my will is that the said land be equally divided amongst my daughters." It was held that the power of appointment given in the will did not at all affect the character of the devise, and that the son took an estate tail converted by the statute into a fee-simple.

The same principle was decided in *See* v. *Craigen,* 8 Leigh, 449. In that case, a will dated in 1803 contained the following clause; "I give and bequeath to my daughter, Phoebe, the upper half of my plantation * * ; but should she die without heirs of her own body," then over. It was held that the daughter took an estate tail converted into fee-simple. See also *Tate* v. *Talley,* 3 Call, 354; *Smith* v. *Chapman,* 1 H. & M. 300; *Bramble* v. *Billups,* 4 Leigh, 90; *Callis* v. *Kemp,* 11 Gratt. 78; *Tinsley* v. *Jones,* 13 Id. 289; 2 Min. Insts. (3d ed.) marg. p. 394, *et seq.*

According to these principles, and what seems to us the proper construction of Mrs. Haden's will, the appellees, Richard G. and William W. Haden, took estates in fee-simple in the "home tract." And this result, undoubtedly, more nearly accords with her intention than the view for which the appellants contend. For nothing is plainer than that she intended to divide *the whole* estate, leaving nothing unappointed, and to vest in her sons and their heirs forever the title to the land in question. As it is, the heirs may eventually inherit the land, whereas if the appellants' view were to prevail, they could never get it at all.

The next question relates to the effect of the sealed instrument executed by Mrs. Haden on the 16th of September, 1871.

It is in these words: "After my death, for value received, I bind my heirs, executors, etc., to pay to my daughter, Florence E. Hood, the just and full sum of five thousand dollars of my Virginia registered State bonds. As witness my hand and seal, this 16th day of September, 1871. E. C. HADEN, [Seal]."

This paper, it seems, was delivered to Mrs. Hood, and is, in form rather a common law obligation than a will. The appellants, however, contend that it was intended by Mrs. Haden as a partial execution of her power of appointment, to take effect at her death, and that it operated as such. But the circuit court held otherwise, and we think correctly. The power, as we have seen, could be executed only by will. And even if the paper in question was intended as a testamentary act, it clearly cannot have the effect for which the appellants contend. In the first place, assuming it to have been so intended, the appointment of five thousand dollars of Virginia registered bonds was in its nature a specific legacy, which was adeemed.

A specific legacy is a bequest of a specified part of the testator's personal estate which is so distinguished. Thus, where a testator bequeathed "such part of my stock of horses as A shall select"; and in another case, "five hundred dollars in personal property to my wife, such as she may select"; and in another, "my capitol stock of 1000 ℔ in the India company's stock"; in these and other like cases, the legacies were held to be specific. So a bequest of certain stock, part of a larger amount owned by the testator, is specific, as has been repeatedly determined. A legacy is specific when the testator intends that the legatee shall have the very thing bequeathed (*e. g.* "five thousand dollars of *my* Virginia registered State bonds") and not merely an equivalent sum in money or other property.

Specific legacies, however, though they constitute a preferred class and do not abate in common with general legacies, yet

are liable to ademption. Indeed, liability to ademption is said to be the most distinctive feature of a specific legacy. Hence, if the identical thing bequeathed is not in existence, or has been disposed of, so that it does not form a part of the testator's estate, at the time of his death, the legacy is extinguished, and the legatee's rights are gone. *Ashburner* v. *Macguire*, 2 Bro. C. C. 108; *Kirby* v. *Potter*, 4 Ves. Jr. 750; *Walton* v. *Walton*, 7 Johns. Ch. 258; *Morris* v. *Garland*, 78 Va. 215; 2 Wms on Ex'ors, 1158; 3 Pom. Eq. sec. 1131; 2 Lead. Cas. Eq. 600, *et seq.*

In the present case, it appears that at the time of his death, Richard G. Haden was possessed of certain bonds of the State of Virginia, of the par value of nine thousand dollars. These bonds were afterwards funded under the act of assembly, of March 30, 1871, commonly known as the "Funding bill," by the widow, who qualified as his executrix. And among the new bonds issued by the State were five thousand four hundred dollars of registered bonds, which were registered in her name as executrix, and were so standing in her name on the 16th of September, 1871. Subsequently, however, they were sold by her, and the proceeds were used in paying off debts of the estate and for other purposes; so that at the time of her death they were not a part of the trust estate. The legacy or appointment to Mrs. Hood was consequently extinguished. Moreover, the will, dated November 24, 1879, disposing of the whole estate, was in effect a revocation of all previous inconsistent wills, if any; and hence, in any view, the claim of the appellants cannot be sustained.

They also complain of the decree directing the land to be sold. The circuit court was of opinion that Richard G. and William W. Haden took only life estates in the "Home Place," and that the reversion was unappointed. Accordingly, a partition being deemed impracticable, a sale was ordered. And

the appellants contend that there is no law authorizing a sale of the reversion in such a case, and that the decree is erroneous.

In the view, however, we have taken of the case, they are not interested in that question, and therefore are not prejudiced by the decree.

The decree, however, is erroneous because prejudicial to the rights of the appellees, Richard G. and William W. Haden. The appointment of the land to them, as we have seen, was in fee-simple, and a sale of the land was therefore unnecessary. From which it also results that they are entitled to the money paid into court by the Richmond and Alleghany Railroad Company as damages for a right of way through the land appointed to them. And the appellee, Benjamin Haden, is entitled to whatever may have been paid, or may yet be due, by the same company for constructing its road through the land appointed to him; the road having been constructed after the land had been so appointed.

The decrees appealed from, in so far as they are in conflict with this opinion, will be reversed, and in other respects affirmed.

DECREE REVERSED IN PART AND AFFIRMED IN PART.