JOSEPH E. MOORE *vs.* GEORGIA S. ALDEN and others.

Knox. Opinion March 14, 1888.

*Will. Legacy. Dower. Preference. Counsel fees. Costs.*

It is a well settled rule of law, that, where a testamentary gift is made by husband to wife in satisfaction of her waiver of dower in his estate, she having at his decease a dowable interest therein, the gift has a preference over all unpreferred legacies, unless a contrary intention may be clearly gathered from all the terms of the will.

The rule holds good although the gift, being an annuity for life, is made payable out of the income of the testator's estate, unless it also appears that the testator intended that the gift should be strictly limited to such income for its payment.

An intention that it is not to be so limited in the present case, is disclosed in the following facts : The testator was childless; the wife was much beloved by him; he regarded the provisions in her behalf as necessary for her needs; believed his estate would be sufficient to pay the several gifts to his wife, and also those to others, including relatives and strangers; makes the payment of his wife's annuity a prior claim to all other bequests, payable out of the earnings of all his individual and partnership properties; but his valuation of his estate turns out to have been greatly overestimated, the income falling far short of the burden imposed upon it.

Allowances, for obvious reasons to be of moderate amount, may be granted out of an estate for the expense of professional services and disbursements, in ascertaining the construction of a will, unless the facts disclose a frivolous and unnecessary case.

ON report. Bill in equity by the trustee under the will of Horatio E. Alden, late of Camden, against the widow, heirs and legatees, to obtain a construction of the will.

(Will.)

"I, Horatio E. Alden, of Camden, in the county of Knox, and State of Maine, being of sound and disposing mind and memory, do make, publish and declare this my last will and testament, hereby revoking any other or others by me heretofore made.

"First. I order and direct my executors to pay all my funeral charges and expenses of suitable gravestones, as soon as may be

after my decease, and my other individual debts as soon as property can be sold to advantage.

"Second. I give, devise and bequeath to my beloved wife, Georgia S. Alden, her heirs and assigns, all the land, orange groves.and other property which I have in the State of Florida, with all the buildings, appurtenances and improvements on the same ; also all the household furniture of every kind and description in my house on Elm street, in Camden village, known as the 'Estabrook house ;' also all my wearing apparel and jewelry ; also my horses, carriages, harnesses, saddles, and other trappings, etc., belonging with the same ; also the sum of one thousand dollars to be paid to her from sales of my individual property outside of the firm property of H. E. & W. G. Alden, and I also give and grant to my said wife during her life the annuity and sum yearly of one thousand dollars to be paid from the earnings of my individual and partnership property ; which devise, bequests and annuity are intended to be in lieu of all allowance, dower and distributive share of my estate.

"Third. I hereby order and direct and provide that the business of the 'Camden Anchor Works' shall be carried on after my decease by my estate and my brother William G. Alden, or his estate in case of his decease, for the period of five years, and for as much longer as my executors and my brother, William G. or his representatives, shall deem for the interest of all concerned, hereby authorizing the use of the firm name of H. E. & W. G. Alden, after my decease, in any and all business transactions necessary to carrying on said business.

"Fourth. I give and grant to my sister, Salina Andrews, the annuity and sum yearly of three hundred dollars, to continue during the life of my said wife should my said sister so long continue to live, to be paid to her, my said sister, from any of the net earnings and income of my individual and partnership property remaining after paying the annuity provided for my said wife.

"Fifth. I give and grant to my cousin Feroline Bachelder, the annuity and sum yearly of two hundred dollars, to continue during the life of my said wife, should my said cousin so long

continue to live, to be paid to her, my said cousin, from any of the net earnings and income of my individual and partnership property remaining after paying the annuity provided for my said wife and after paying the annuity provided for my said sister.

"Sixth. I give and bequeath to the town of Camden in the county of Knox, and State of Maine, the sum of two thousand dollars, to be paid to said town at the decease of my said wife, to hold the same upon the uses and trusts following: Namely, that the said town will expend the interest of one-fourth of said sum in keeping in good order the Alden cemetery lot, monument, fence, stones, etc., in 'Mountain Street Cemetery;' and the interest of one-fourth of said sum in setting out and taking care of shade trees for improving and adorning 'Mountain Street Cemetery' near Mt. Battie, in said Camden; and the interest of one-fourth of said sum in providing annually turkeys for Christmas dinners for such poor families in Camden as may be deemed by the selectmen most deserving, and the interest of the remaining one-fourth of said sum of two thousand dollars in making additions to the library of the 'Ladies' Library Association' in Camden village, of such new books as the committee of said association may select.

"Seventh. Should a child or children be born to me of my said wife before or after my decease, I give, devise and bequeath to it or to them all the rest and residue of my real and personal estate.

"Eighth. In case I leave no child or children and none are born to me of my said wife after my decease, I give and bequeath to my sister, Salina Andrews, her heirs and assigns, from any property remaining at my said wife's decease not otherwise disposed of in this will, the sum of two thousand dollars, and all the rest and residue of my real and personal estate, remaining at the decease of my said wife after carrying out all the previous provisions made in this will, I give, devise and bequeath in equal shares, as follows: One-ninth to my mother Polly G. Alden, her heirs and assigns; one-ninth to my brother B. H. B. Alden, his heirs and assigns; one-ninth to my brother William G. Alden, his heirs and assigns; one-ninth to my

brother Henry L. Alden, his heirs and assigns; one-ninth to my sister Salina Andrews, her heirs and assigns; one-ninth to my sister Sarah B. Adams, her heirs and assigns; one-ninth to the children of my late brother John M. Alden, should any of them survive my said wife; one-ninth to the children of my late brother Cyrus G. Alden, should any of them survive my said wife; and one-ninth to my cousin Feroline Bachelder, should she survive my said wife; but should all the children of said John M., or all the children of said Cyrus G., or should said Feroline Bachelder die before the decease of my said wife, then their share or shares shall be equally divided among such of my said brothers and sisters as shall survive my said wife.

"Ninth. I hereby appoint Henry L. Alden and Thaddeus R. Simonton, of said Camden, executors of this my last will and testament.

"In testimony whereof, I have hereunto set my hand and seal this thirty-first day of July, in the year of our Lord one thousand eight hundred and seventy-seven."

Duly executed, probated and allowed.

*Joseph E. Moore*, plaintiff, *pro se.*

*A. P. Gould*, for Georgia S. Alden, widow.

*T. R. Simonton*, for the other defendants.

PETERS, C. J.   Horatio E. Alden, whose will is presented to be construed by the court, after directing that certain necessary bills be paid, and giving his wife certain property outright, also gives to her an annuity of one thousand dollars for her life time, the annuity to be paid from the earnings of his individual and partnership properties; and he declares that these gifts to his wife are to be in lieu of all allowances, dower, and distributive share to which she might be entitled out of his estate.

He then grants other annuities, their payment made subject to a prior payment of his wife's annuity, and makes sundry bequests to take effect on the death of his wife. It appears, that he died seized of dowable real estate; that no child was left by him; that the widow is now thirty-nine years old; and that the

entire estate reduced to money, now in the hands of the trustee, the administration accounts having been finally settled, amounts to $11,707.61.

It is evident enough, that the annuity to the widow, to say nothing of the other annuities, cannot be obtained from the income and earnings of the estate. And the question of the case is, whether she is entitled to receive the amount each year, although it will be necessary to entrench upon the *corpus* of the estate to supply the deficiency. She correctly claims that the full annuity should be paid to her, as long as the estate lasts, upon the rule, which appears to be well established in the law, that, where a testamentary gift is made by husband to wife, in satisfaction of her waiver of dower in his estate, the gift has a preference over all other unpreferred legacies, and for the reason that the estate receives a valuable consideration for such gift. The principle is based upon the idea of contract between husband and wife. He dictates the terms and she accepts them. The estate gets her right of dower, and she receives the gift in the will in lieu of dower.

This is an old doctrine originating with Lord COWPER, in *Burridge* v. *Brady*, 1 P. Wms. 127, adopted by Lord HARD-WICKE, in *Blower* v. *Morret*, 2 Ves. Sr. 422, which has so extensively prevailed as never to have been dissented from, that we discover, either in the English or American cases. Its application was resisted by counsel in an early case (*Davenhill* v. *Fletcher*, Ambler, 244), where the gift to the wife greatly exceeded in amount the value of the dower, the argument being placed on the great inadequacy of consideration, but the point was overruled, the answer to it being that the testator is the only and best judge of the price at which he is desirous to become the purchaser of the wife's right. Rop. Leg. *432. The rule does not, however, apply, if the wife has no right of dower. Her right must be subsisting at the death of the testator. Otherwise, she is not a purchaser. In such case she pays no consideration. Same citation.

And the general rule does not prevail, if the will clearly disclose that the testator intended that the gift to his wife should not have a preference over other bequests. The burden will be on the executor to show from the terms of the will that a preference is forbidden. The presumption favors the widow's claim. The intention of the testator, as found in the will, is a part of the contract made with the widow, and if she accepts the provisions of the will, she does so voluntarily, and abides the consequences.

The internal evidence of the will, in the present instance, does not repel but favors the widow's contention. It discloses that the testator, having no child, had great affection for his wife, providing in different ways in his bequests for her protection. The evidence is conclusive that he believed his estate would easily bear all the burdens placed by him upon it. He must have assumed that the annuity to his wife would be needed by her, to sustain the equipments of house-keeping given her, including the support of horses and carriages provided for her use. He makes the payment of his wife's annuity a prior claim to all other bequests. The very relation of husband and wife creates a strong presumption in her behalf, when we consider that, after the bounties to her are paid, distant relatives if not strangers are provided for. We think that the will, as a whole, though not by express terms, by implication indicates preference in the devises and bequests to the wife, and struggles to utter it.

There is a clause in the will, which if standing alone, might seem to look in a contrary direction, and that is the declaration of the testator that the annuity is to be paid from the earnings of his individual and partnership property. We think the idea of the testator in this clause, was that he was enlarging rather than limiting the funds out of which the annuity might be paid. He devotes for the purpose the earnings of all his properties. He expresses no limitation or condition. The gift is unconditional and absolute, although, as is often the case, he overestimates the sources of supply which were to assure its payment. The sources indicated turning out to be insufficient, others must be taken to supply the deficiency. It is a demonstrative legacy, not lost

because of the non-existence of the property specially pointed out as a means of satisfying it. A case very like this, strongly sustains this conclusion. *Smith* v. *Fellows*, 131 Mass. 20. The following additional references may be profitably consulted upon the general questions of the case. *Heath* v. *Dendy*, 1 Russ. 543; *Wells* v. *Borwick*, L. R. 17 Ch. Div. 798; *Potter* v. *Brown*, 11 R. I. 232; *McLean* v. *Robertson*, 126 Mass. 537; Pom. Eq. Jur. § 1142, note and cases; Schoul. Ex. & Adms. § 490, and cases in note.

Parties to the bill ask for allowances for the expense of professional services and disbursements. Such expenses may be thrown upon the estate, unless the petitioner discloses a frivolous or unnecessary case. *Howland* v. *Green*, 108 Mass. 283; *Straw* v. *Societies*, 67 Maine, 493. But such charges should usually be moderate, for several reasons. Because there should not be strong temptation to multiply applications to the court for the exposition of wills; because representatives of estates have not the same stimulus for their protection as living owners have; and because, as a rule, such cases involve a peculiar kind of litigation which casts less responsibility than usual upon counsel, and more upon the court.

The amount of expenses to be allowed in this case, to be settled by the judge who passes upon the form of a decree.

*Bill sustained.*

WALTON, VIRGIN, LIBBEY, FOSTER and HASKELL, JJ., concurred.