WILLIAM R. MERRIAM and Others v. JOHN W. MERRIAM and Others.[1]

June 18, 1900.

Nos. 11,991—(106).

### Will—Provision for Annuity—Construction.

Where a testator provides a fund to furnish a certain income for his widow, designating the amount of the income, and providing that it shall be paid each year, and that securities shall be selected sufficient to secure that result, the selection of such securities in the first instance does not constitute a specific and changeless fund or legacy, the income of which must necessarily be diminished upon diminution of the producing capacity of such fund.

### Same—Demonstrative Legacy.

Such a legacy is what is called a "general" or "demonstrative" legacy, and, when the fund fails to produce the income directed by the testator for the benefit of his widow, such income, to the full amount, should be made up from the corpus of the estate.

### Same—Election by Widow—Contract.

Where a widow accepts a provision for an annual income on consideration of a deed of her inheritance rights, at the request of the testator, such provision becomes contractual between her and the estate, and binds the estate to a fulfilment of the conditions upon which her acceptance was made.

Action in the district court for Ramsey county by plaintiffs as trustees under the will of John L. Merriam, deceased, to obtain a construction of the will. Charles A. Appleton, a judgment creditor of Robert H. Merriam, intervened. The case was tried before Lewis, J., who made findings of fact, and as conclusion of law determined the construction of the will. From a judgment entered pursuant to the findings, plaintiffs appealed. Reversed.

*John F. Fitzpatrick* and *John D. O'Brien,* for appellants.

Counsel cited: Moore v. Alden, 80 Me. 301; Pierrepont v. Edwards, 25 N. Y. 128; Boomhower v. Babbitt, 67 Vt. 327; Merritt v Merritt, 43 N. J. Eq. 11; Additon v. Smith, 83 Me. 551; May v.

[1] Reported in 83 N. W. 162.

Bennett, 1 Russ. 370; Boyd v. Buckle, 10 Simon, 595, 596; Trevor v. Trevor, 5 Russ. 24; Davies v. Wattier, 1 Simons & S. 463.

*Keith, Evans, Thompson & Fairchild* and *Davis, Kellogg & Severance,* for respondent.

Counsel cited: Baker v. Baker, 6 H. L. Cas. 615; Addecott v. Addecott, 29 Beav. 460; Sheppard v. Sheppard, 32 Beav. 194; Booth v. Coulton, L. R. 5 Ch. App. 684; Forbes v. Richardson, 11 Hare, 354; Taylor v. Taylor, L. R. 17 Eq. Cas. 324; Irwin v. Wollpert, 128 Ill. 527; DeHaven v. Sherman, 131 Ill. 115; Delaney v. Van Aulen, 84 N. Y. 16; Nudd v. Powers, 136 Mass. 273.

LOVELY, J.

Appeal from a judgment construing certain provisions of the will of John L. Merriam, deceased, providing a source of annual income for his widow, Helen M. Merriam. The testator died at St. Paul, January 12, 1895, leaving surviving his widow, four sons, and one daughter, for whom he had made generous testamentary provisions from his ample fortune. One of the testator's sons, Robert, has become insolvent, and the owner of judgments against him duly intervened and is now the active contestant in this controversy. He claims that a legacy provided in the will for the benefit of the widow should be limited to apply to a specific fund, the principal of which cannot be resorted to upon the failure of the same to produce the amount it was created to secure for the widow.

It is necessary to set forth in full certain material portions of the will bearing upon the point in dispute. The testator bequeathed to Mrs. Merriam "the household furniture, silverware, family carriage, other family vehicles, and all horses used with the same * * * . and all other household property in and about her homestead, and any stable building and stable fixtures," absolutely, in case of her survival. He also bequeaths to his wife one-third of all his real estate, to be conveyed to her after his death, coupled with a request that one-fifth of such share be conveyed within ninety days thereafter to his son William R. Merriam, which conveyance is in consideration and upon the condition that the widow shall have

"An annual allowance of $8,000 per year for and during her natural life, and which said annuity shall be provided for and paid over in

the manner following, that is to say: My executors shall set apart from or provide out of my estate such interest or dividend-bearing securities as shall be sufficient to produce a certain annual net income of at least eight thousand dollars ($8,000.00) per year, and which said net income they shall collect and pay over to my said wife therefrom the sum of eight thousand dollars ($8,000.00) per year in quarterly instalments, for and during her natural life, for her own absolute use and disposal. And upon the death of my said wife the said securities shall be held by my said executors or their successors as a part and parcel of the rest and residue of my estate, to be hereinafter disposed of; but provided always, that if my said wife shall, in the exercise of her option, prefer and choose not to make the said conveyance and grant to my said son William R. Merriam of said equal one-fifth part of said one-third part of said real estate so to be set apart and conveyed to her, or if my said wife shall die after my own death, and before she shall have made such grant and conveyance to my said son William R. Merriam, his heirs or assigns, then, and in either of such events, the said executors shall forthwith convey and deliver to my said son William R., or unto his heirs or assigns, so much of the said interest-bearing securities so set apart for the purpose aforesaid as shall be equal in cash value to the cash value of the said equal one-fifth of said one-third of said real estate so to be set apart and conveyed to my said wife, and my said son William R. shall thereupon have and hold the said securities so to be conveyed to him, and unto his heirs and assigns, forever. And the balance of the said interest-bearing securities then remaining in the hands of the said trustees after such deliverance of a part thereof to said William R., his heirs or assigns, they shall continue to hold and pay the income thereof to my said wife for and during her natural life. And upon and after her death the same, and any net accumulations thereof, shall become a part and parcel of the net rest and residue of my estate, to be hereinafter disposed of."

An advancement of $50,000 for the benefit of the testator's son William R. Merriam is also noticed in the will as made in lieu of his distributive share in his father's estate, with a suggestion that further advancements may be made, and would in that case be charged against such legatee. It is further provided that the residue of the estate is, including a few minor legacies not noticed, bequeathed to his wife, his son William R. Merriam, and his friend Amherst H. Wilder, in trust for the purpose of executing the provisions of the will. Three remaining sons of the testator are to have a distributive share of one-fourth severally of the residue of the estate when each of said children reaches the age of 28 years.

The remaining one-fourth of the undistributed part of the estate is to be reserved by the trustees, with its accumulations, during the life of his daughter previously married, Jennie E. Howell, to whom an advancement of $50,000 (the same amount as that advanced to William R. Merriam) had been made upon her marriage; and the testator authorizes and empowers the trustees,

"In the exercise of their sound judgment and discretion, to provide for the comfortable support and maintenance of my said daughter during her lifetime out of and from the said net rents, incomes, profits, and accumulations of the said remaining one-fourth part of the said rest and residue so to remain in their hands during the lifetime of my said daughter; and, in the exercise of the same judgment and discretion, they may from time to time, during the lifetime of my said daughter, convey, pay over, and deliver to my said daughter such parts and portions of the principal thereof as to the said trustees or their successors as such may seem for the best interests of my said daughter. And any and all such payments, whether of principal or interest, income or profits, which the said trustees or their successors shall so make to my said daughter during her lifetime, in the exercise of such judgment and discretion, shall thereafter inure to her, and her heirs and assigns, forever. But nothing in this will contained shall entitle my said daughter to any interest or estate in or to any part or portion of my real estate or personal property save and except to the extent and amount thereof which the said trustees or their successors may, in the exercise of their judgment and discretion, pay over or convey to her during her lifetime."

The testator appointed his wife, his son William R., and his friend Amherst H. Wilder executors of the will, as well as trustees to execute the trusts created therein; and further provided that such trustees

"May also, in their discretion, grant, bargain, sell, lease, mortgage, or otherwise incumber such real estate or personal property, or any part or portion thereof, either for the purposes of paying debts or legacies, or for the purposes of such partitions or divisions, or for the purposes of investment or reinvestment, or otherwise providing for or carrying out the true intent, purposes and trusts of this will. And, for the purposes aforesaid, they are hereby authorized and empowered to make, execute, and deliver any and all such deeds, leases, mortgages, or other conveyances in the law necessary to carry out the powers hereby granted."

80 M.—17

Within the time designated, Mrs. Merriam made the deed to William R. Merriam conveying to him one-fifth of her one-third part of the real estate, in order to accept the annual income of $8,000 provided for her in the will.

Such proceedings were duly had in the settlement of the Merriam estate that securities were then selected by the trustees for Mrs. Merriam that produced an income at the time of such selection of $8,000 per annum.

The estate, so far as could be, has been settled, but the unexecuted charges and trusts necessarily will continue the trustees or their successors in possession of a large portion of testator's property for some time. Since the securities providing for the annual support of Mrs. Merriam were set apart, their value and producing capacity have considerably diminished, and at the time of the commencement of the suit did not yield the requisite income, which contingency has led to this action, wherein the trustees ask that the will may be construed to allow them to resort to the corpus of the estate to make up, from time to time, the deficiency in the widow's income to the amount named in the will.

The vital question involved on this appeal cannot be better considered than under a fair statement of the contention of the intervenor, who claims: (1) That the selection of the securities when made by the trustees constituted a specific fund, which, having produced when set apart the designated amount of $8,000, must continue to be the sole and changeless source of the widow's income, although its producing capacity diminishes from year to year thereafter. (2) That when the same was accepted by Mrs. Merriam she was bound by such acceptance, and could not require, upon any diminution of the income produced, that the deficiency be made up out of the estate; in other words, that when the selection was made and accepted the income thereof was all that she was entitled to receive, and, no matter to what extent the earning capacity of such securities declined, they must be held intact for distribution to other heirs after Mrs. Merriam's decease.

In support of this view, it is claimed—First, that the weight of authority will not support in this particular case a resort to the corpus of the estate to supply the deficiency of the widow's income;

second, that the particular provisions of the will which segregate the securities set apart to supply the income for Mrs. Merriam are themselves inconsistent with the view that the testator intended any interference with the corpus of the estate; third, that another portion of the will, which provides for a resort to the corpus of the estate in a certain case for Mrs. Howell, the daughter of the testator, is opposed to the theory that the testator intended that the same recourse should be had to make up a deficiency of the income of the widow, because, as urged by way of argument, the testator, having expressed his purpose in that respect for his daughter, would have done the same for his wife if such had been his intention. The trial court sustained the contention of the intervenor, and held that Mrs Merriam had accepted the securities first set apart by the trustees to realize the income provided for, and that upon the diminution of such income it could not be made up from the residue of the estate, and ordered judgment accordingly.

We are unable to agree with the learned trial court in this view. We do not think such conclusions are supported either by the weight of authority, a literal construction of the terms of the will itself, or a sensible effort to discover the real intentions of the testator, which it is conceded on all hands should govern where it is possible to ascertain such intentions, by considering all the provisions of the instrument together, to ascertain the testator's purpose when his lips are sealed in impenetrable silence, and without his aid the interpretation of his motives is left to the judgment of the courts which protected his property during life, and are constrained by the highest obligations of duty to execute his testamentary wishes after death. We may premise that each case must rest upon its own particular facts. The aid authority can give is not in such cases complete or absolute, but comparative, at best. However, the courts have recognized certain principles of construction in similar cases, which, as far as they go, are of substantial assistance.

The legacy to Mrs. Merriam was not specific, or fixed by positive limitation upon the source of income, but is what may be called a "demonstrative" legacy, which is defined to be "a bequest of a certain sum of money, with a direction that it shall be paid out of

a particular fund.   It differs from a specific legacy in this respect that if the fund out of which it is payable fails for any cause it is nevertheless entitled to come on the estate as a general legacy." 1 Roper, Leg. 153; Armstrong's Appeal, 63 Pa. St. 312, 315; 3 Pomeroy, Eq. Jur. (2d Ed.) § 1133.   And in many instances to be found in the books where legacies of this character are designated from a particular fund provided to pay them, and it turns out that such fund is insufficient, or is not in existence, courts of the highest respectability have held that where a purpose to the contrary is not expressed, so as to make the bequest a specific legacy, resort will be had to the corpus of the estate to carry out the purpose of the testator.   Among a few of many authorities supporting this view, the following are cited as particularly appropriate to this contention: Pierrepont v. Edwards, 25 N. Y. 128; Merritt v. Merritt, 43 N. J. Eq. 11, 10 Atl. 835; Boomhower v. Babbitt, 67 Vt. 327, 31 Atl. 838; Smith v. Fellows, 131 Mass. 20; Moore v. Alden, 80 Me. 301, 14 Atl. 199; Additon v. Smith, 83 Me. 551, 22 Atl. 470; Morriss v. Garland, 78 Va. 215, 223.

To turn from the general principles which govern in such cases to the terms of the instrument under consideration, we do not think there need be any doubt whatever of the leading purpose of the testator; for it is stated in explicit terms, after providing for the deed from his wife to his son, which she is requested to make as a conveyance of a portion of her legal inheritance rights, the testator, in consideration thereof, provides for his widow (we quote his exact language):

"My executors shall set apart from or provide out of my estate such interest or dividend-bearing securities as shall be sufficient to produce a certain annual net income of at least eight thousand dollars per year   *   *   *   for and during her natural life, for her own absolute use and disposal."

It seems to us almost finical hypercriticism to quibble over the effect of this language.   The income is to be for life.   It is to be certain in amount each year.   The securities selected are to be sufficient to yield such income.   How it can be certain,—how the securities can be sufficient for an annual income,—without an intention that the trustees should resort to the corpus of the estate in

case of the diminution of such securities, it is impossible to conceive, consistently with the exact sense of the testator's own words. Opposed to this view, no other suggestion has been made than that the trustees must make a selection that should be absolute and binding upon the widow for all time, for the reason that the securities when they have accomplished the purposes of providing the income are, under the provisions of the will, charged to follow the general distribution of other property. But the controlling primary thought of the testator is that the selected securities must first secure the widow's support as provided for, and until that purpose is accomplished they are subject to this primary use, to which they are set apart and subordinated.

Had it been the purpose of the testator to have selected certain securities as a "specific legacy," to furnish an unchangeable fund out of which an annual income for his wife might be obtained, such selection would naturally have been made by himself, for he knew the value of his securities better than any third party; or, had he intended that his trustees should have selected a bunch of securities that were to be a final and a changeless source of revenue for the support of his widow, it seems but reasonable to believe that he would have so expressed the purpose plainly in the last provision which he was making for his spouse, actuated by the kindly and affectionate purpose with which he was undoubtedly imbued for the partner of his life and the mother of his children; for it clearly appears from the many provisions in the will which illustrate his generosity and love for her that the endearing term in which he refers to his wife is no formal compliment, but a substantial reality, and this is a consideration to which weight has been given in the decided cases.

It is far more reasonable, in searching for the intention of the testator, to treat the authority which the testator has given the trustees to make reinvestments, and to deal with the estate for the purpose of obtaining other or new securities to carry out his wishes, to apply, in furtherance of the positively expressed intention that the securities selected shall be "sufficient," the natural conclusion that the trustees are authorized to keep the amount of the securities sufficient, and that they might add to those already se-

lected others then in existence or to be created, within the clearly-expressed authority delegated to them to fulfil the primary purpose of the testator, viz., to have a fund "sufficient" to secure the widow $8,000 annually each year during her life.

We do not think there is any force in the point that Mrs. Merriam accepted the securities that were first selected, and is bound by such selection. This fallacy rests upon the unwarranted assumption that the securities have already been selected, but the selection is to be in the future, and dependent upon their sufficiency. While it is required in the will that the widow have an option to take an income conditioned on the execution of a deed, yet this is the only condition in lieu of her inheritance rights that is provided for in the will at all. It relates only to the amount annually of the same, and by plain inference every other condition is excluded. We do not find in the record any evidence whatever that Mrs. Merriam herself, as legatee, accepted any specified securities, or explicitly agreed that those set apart by the trustees should constitute the sole source of her income, or that she herself did anything else to prevent her from claiming the full amount of the income which the testator intended she should have. (The securities were in fact to be selected after she expressed her option.) She was only one of the three trustees whose duty it was to make the selection, and the theory that making the selection at the time when the securities were of sufficient value to produce the requisite income prohibits her from any further claim is not open to intervenor. In the first place, it binds her to a mistake of judgment, not only of herself, but of the other trustees, and it subjects her to a loss which the testator did not intend, by the action of a majority of the trustees in which she may not be said to have concurred.

Again, we doubt not that, in making the first selection of securities to provide for the annual income of $8,000 for the widow, it was the duty of the trustees, in view of the residuary interest of other legatees and beneficiaries, to set aside for that purpose no more than was necessary to produce the amount required. This was highly equitable and just. At least, if the securities, in the judgment of the trustees so selected, produced a larger sum than

was needed, it would not have availed the widow. The theory that the bunch of securities selected was to be changeless, and would not give her the excess of the income produced, but would subject her to a loss if its value decreased, does not, under the terms of this will, commend itself to common sense or justice.

We think the better view is that it was the duty of the trustees to select sufficient securities for the purpose of securing the income of the widow, and so long as their power over the estate remained to keep the same good. It is apparent that at no time before his death could the testator have supposed that the securities to be selected would diminish in value, and there is no weight in the suggestion that he intended any course that would decrease the beneficial result desired for the widow in this respect. Such a view is in plain opposition to the words in which he expresses his paramount designs in that respect, and such an inference would attribute to his memory a purpose inconsistent with his character, as clearly indicated by every other provision of the will. He was not making a catching bargain with his spouse, or dealing at arm's length with the partner of his life, but providing, rather, a generous provision for her support according to her station in life, which he understood better than any one else, and the primary purpose of the testator must be held to control upon the happening of exigencies which he could not foresee, and such is the foundation upon which the rule rests that in a demonstrative legacy a failure to secure from the funds selected the income provided for justifies a resort to the corpus of the estate, as will be seen by reference to the authorities referred to above.

There may be some dialectical force in the claim that the provisions in the will for the benefit of Mrs. Howell, the married daughter of the testator, provide, under certain contingencies, for a resort to the corpus of the estate, and, if the testator had intended that the estate should be resorted to in any other case, he would have expressed that wish as well as in the case of Mrs. Howell. By comparing the provisions made for Mrs. Howell and William R. Merriam, it will be seen that each had actually received as an advancement the heir's distributive share of the estate. And it is very probable that the portion set apart for Mrs. Howell clearly

was not intended to be her distributive share, but a source intended for her protection in case of want or necessity, since it is left to the good judgment of the trustees to give or withhold any part of it. Under this provision of the will, the trustees might take from such share at the outset any part of it, or they might give or withhold it all, and turn it over to the estate or other beneficiaries. The conditions relating to this provision for a previously married daughter, and the creation of a fund to raise a certain income for the widow, are so diverse in essential characteristics, and so many reasons suggest themselves why the father might have desired to provide for such daughter differently from any other member of his family, that it is impossible satisfactorily to utilize any analogy between the two cases, or force an argument upon the distinctions of either that conflicts with the primary purpose of the testator, which must not be defeated by inferences upon the improbabilities of the intentions expressed in the one case and to be inferred in the other.

But a controlling reason, in our judgment, why the widow of the testator is in this case entitled to have the income of $8,000 a year provided for her out of the estate is that, by the deed she made in consideration of securing that sum annually, the estate has become obligated to her, and is bound to the accomplishment of that end. The legacy to Mrs. Merriam was not gratuitous. There was a fair and valuable consideration for it. The condition was attached to it by the testator. She accepted it, and has a contract right in its fulfilment. In the case of Moore v. Alden, supra, in which we fully concur, the court says:

"Where a testamentary gift is made by husband to wife, in satisfaction of her waiver of dower in his estate, the gift has a preference over all other unpreferred legacies, and for the reason that the estate receives a valuable consideration for such gift. The principle is based upon the idea of contract between husband and wife. He dictates the terms and she accepts them. The estate gets her right of dower, and she receives the gift in the will in lieu of dower.

This is an old doctrine originating with Lord Cowper, in Burridge v. Bradyl, 1 P. Wms. 127, adopted by Lord Hardwicke, in Blower v. Morret, 2 Ves. Sr. 420, 422, which has so extensively

prevailed as never to have been dissented from, that we discover, either in the English or American cases."

While the conclusions we have reached may not be entirely free from doubt, yet the result seems to be as plain as can be reached in any complicated question of interpretation, where absolute certainty is impossible. And we hold that it was the paramount purpose of the testator in this case that his widow should have an annuity of $8,000, providing his estate could furnish that sum; that all other bequests are subsidiary to this purpose; and that the trustees of the estate are authorized, in the exercise of their best judgment, to act in accordance with these views, and to dispose of such securities, or make such investments, as may be necessary to carry out such purpose.

The judgment of the district court is reversed, and the case is remanded, with directions to enter judgment in accordance with this opinion.

LEWIS, J. (dissenting).

It is necessary to understand the nature of this action in order to consider the nature of the issues involved. The complaint alleges that the estate was duly administered, and a final decree was made and entered in the probate court on November 4, 1895, and the action is brought by the executors in their capacity as trustees under the fourth clause of the will, calling upon the court to declare and adjudge that it is the right and duty of such trustees to sell any part of the property included in the trust, and to apply the proceeds thereof, so far as may be necessary, to produce the annual sum of $8,000; it being alleged that the income from the securities composing the trust fund amounts to less than $6,000 per annum. The intervenor resists the demand as a creditor of one of the sons. The court found that the annual revenue arising from the trust fund at the time of the trial did not exceed the sum of $4,950, but held, as a conclusion of law, that under the provisions of the will the trustees had no power to charge or consume the body of the estate so set apart for the trust for such purpose. Assignments of error addressed to this holding require a construction of the will by this court.

A brief analysis of the will is essential to an understanding of its terms. The testator was a successful and prominent business man, a resident of the city of St. Paul, and his purpose was to divide his estate principally among the members of his immediate family, which consisted of his son Ex-Gov. W. R. Merriam, three other sons, and one daughter, and his wife, their mother. The will bears date November 9, 1885, and the testator died January 12, 1895, no change having been made in its provisions. It contains three separate trusts,—one for the benefit of a sister and a Miss Watson, one for the benefit of his married daughter and sons, and the one in reference to the wife. Each of these separate trust provisions is peculiar to itself, showing a studied design as to each. The one in favor of the sister and Miss Watson is a bequest to the executors, as trustees, of such an amount of interest-bearing securities as will produce a net annual income of $700; there being no fund set apart by the testator to be invested, the income from which shall be paid, $600 to the sister, and $100 to Miss Watson, for life,—the fund to revert to the estate upon their decease, and be distributed according to the succeeding provisions of the will.

After providing for certain specific bequests for charitable purposes, and a special gift to his son W. R., and after declaring the trust for the wife, the testator bequeathed the residue of his estate to his wife, his son W. R., and A. H. Wilder, as trustees, in trust for certain definite purposes, viz.: The necessary amount to maintain and educate his two minor sons, Robert and A. W., until their majority; as soon as each of his sons John, Robert, and A. W. shall attain the age of 28 years, to pay over to him an equal one-fourth part of the estate then remaining in their hands; to advance to these sons such amounts of their prospective share as the trustees may think advisable; the other one-fourth part to remain in the hands of the trustees during the natural life of his daughter, Mrs. Howell, with power in the trustees, in their discretion, to provide for her comfortable maintenance out of the income of such fourth part, and with the power, also, to pay to her such portions of such principal as may seem to them for her best interests, with a provision that the balance of such part not used for the benefit of the daughter shall go to the sons John, Robert, and A. W. at her death.

The will contains bequests of a special nature to his son W. R. of a one-fifth part of his real estate and personal property, subject to the other legacies, and special mention is made of certain advances having been made to him.

The testator makes special provisions for his wife as follows: All the household furniture, silverware, carriages, and horses used at the time of his decease, and all other household property in and about her homestead, and any stable building and fixtures he may own and use in connection with her homestead; also all moneys which may accrue to the estate from the Masonic Relief Association; also one-third of all of his real estate. The fourth clause of the will, which provides for the trust fund in question, is set out in the opinion, with the exception of the following, which is an important part thereof, viz.:

"My said wife shall exercise and make known her choice and option in the premises within ninety days after her said one-third part of said real estate has been set apart and conveyed to her, and written notice of such conveyance given to her."

It appears from the will that the wife owned the family homestead, thus possessing valuable property in her own right. The only terms of endearment employed are "my beloved wife," which occur twice, and they are the usual and ordinary words used in such instruments. The wife, his son W. R., and a prominent business man of St. Paul were appointed executors, and four other well-known business men of St. Paul were named as successors should vacancies occur.

A study of the various provisions of this will, and of the instrument as a whole, reveals a carefully arranged plan. There are many things considered. A sister, and probably a dependent relative; certain charities had claims which must not be omitted; his wife, his daughter, the favored son, his minor children. With what elaborate and painstaking care are the necessities and the natural characteristics of the family studied and provided for. And who so well knew their peculiarities, and understood the need of a free or restraining hand, as this father of the household. The will is complete and harmonious throughout. All its parts are consistent, each provision bearing a studied relation to the whole. To

permit the general estate, so far as not distributed, or the trust fund itself, to be invaded, as the decision declares, destroys the equality of distribution as arranged among the different members of his family, and in effect makes a new will.

Taking up the trust provisions of the fourth clause, we find it to consist of the following distinct features: (1) A bequest to his wife of one-third of all of his real estate. (2) The executors were to set apart interest or dividend-bearing securities sufficient to produce the net amount annually of $8,000, which trust fund was to be used in either of two ways, according to his wife's option. (3) There is an express wish and desire that she deed a one-fifth interest of her real estate to her son W. R. (4) In case she does so deed the one-fifth part to W. R., she is to receive the annuity. (5) If she elect to make the exchange, and receive the annuity, then upon her death those securities to go to the residue of the estate as disposed of under other provisions of the will. (6) She must exercise the option to make the exchange within ninety days after notice that her one-third of the real estate has been conveyed to her. (7) If she does not exercise the option, but retains the real estate, then the executors are to deliver to the son W. R. so much of such securities so set apart as shall be equal to the cash value of the said one-fifth of one-third of her real estate. (8) The balance of such securities remaining in their hands the trustees shall hold and pay the income thereof to the wife during her natural life.

It will be noticed that the trust fund is directed to be set apart as an independent act. The widow was required to deal with it as it was after so set apart. The form in which the bequest is made cannot matter. The entire provision must be considered, and, so considering it, this trust-fund provision is as definite and certain as any lawyer could state it. Having in mind that it might be of advantage for his wife to exchange a portion of her real estate for the other class of property, he arranges a scheme to enable her to do it. There was nothing compulsory about it. She could have the income from the securities, or she could retain the real estate. This fund, sufficient to produce an annual income of $8,000, was to be selected by the trustees whether the widow made the exchange or not. If she did not exercise the option, to the extent of the

value of the real estate, securities were to go to W. R. Before she could pass upon the expediency of making the exchange, the securities had to be selected, and she was required to exercise her judgment as to which she would take,—the real estate or the income from the fund so selected. There is not a word intimating that this fund could at some future time be reinforced from the body of the estate. "I give and bequeath unto my said wife an annual allowance of the sum of $8,000," not out of his estate, but which "shall be provided for in the manner following." Having carefully prepared this trust fund to go to the benefit of the wife, or to her and the son, as she should choose, and having provided that the securities should revert to the estate for the benefit of his other children upon the decease of his wife, it seems inconceivable that the testator intended that the trust-fund securities should be sacrificed if the income therefrom should temporarily fall below $8,000. The demand of the trustees in this proceeding is to be empowered to dispose of the securities composing the trust fund to make up the deficiency. They make no demands upon the general estate, although the opinion proceeds upon that assumption.

Is it possible to gather from this instrument the intent that the very object in providing an annual income should be defeated by the destruction of the fund itself? This, indeed, would be killing the goose which lays the golden egg. When the author of this bequest was working it into shape, he took into consideration the probable variation in the value of his real estate, and of the securities, and for that reason placed stress upon the fact that the trustee should select enough to produce that amount annually. But no wish expressed in the will is more certain than that such selection should be final. No thought was further from the mind of the man who arranged the provisions of this trust than the granting of power to eat up the substance during a reverse in values.

It is perhaps true, as stated in the opinion, that each particular case must rest upon its own particular facts, and that such aid as the authorities can give is of value only by way of illustration. However, seven cases are selected which it is claimed establish certain rules of construction supporting the views of the court. Let us examine these cases.

In Additon v. Smith, 83 Me. 551, 22 Atl. 470, the annuities were general legacies,—an absolute gift of a definite quantity out of the estate. In Moore v. Alden, 80 Me. 301, 14 Atl. 199, the annuity is as follows:

"I also give and grant to my said wife during her life the annuity and sum yearly of one thousand dollars to be paid from the earnings of my individual and partnership property; which devise, bequests, and annuity are intended to be in lieu of all allowance, dower, and distributive share of my estate."

No fund was provided, and there were no limitations except as to earnings. The court held that it was not the intention of the testator to limit the annuity by the actual earnings of the estate, because, the annuity having been granted in lieu of dower, it should not be limited by the earnings, unless a contrary intention appeared from the other parts of the will. The testator having no children, the court held that a liberal construction should prevail in the wife's favor as against the other legatees. In the case before us the question of dower rights does not arise. She is already given her one-third. The plan simply provides for an exchange by herself of a part of that dower property for an income from personal property, if as made up it suited her.

In Smith v. Fellows, 131 Mass. 20, the annuity to the wife was as follows: "One thousand dollars per year during her lifetime, the same to be paid from the income of my property." The opinion reads:

"It is the gift of a fixed sum, which is to be paid annually, and which is not made contingent or dependent upon the income of any specific portion of his property. There is no particular fund set apart for its payment. The income of the whole estate is charged, and the residue bequeathed to a daughter is described as that which remains after the payment of debts and expenses, and the payment of the legacies mentioned in the will. In view of all these provisions, the fact that the phrase 'to be paid from the income of my property,' is added to the bequest does not show a clear intention to make this legacy specific. It is rather the expression of a wish that the payment should be made from the income in case the same should be sufficient."

It will be noticed that the court draws particular attention to

the fact that no separate fund is set apart, and that the whole estate is charged with the income.

In Boomhower v. Babbitt, 67 Vt. 327, 31 Atl. 838, the annuity of $360 was "to be paid to her, and for her, from time to time, during each year, as may be needed and required, and to be paid by my executors; and to the end that the payments  *  *  *  may be effectually secured, and the same duly paid, it is my will that $11,000 of my estate shall not be received and divided until the said annuities or yearly payments be completed and cease to become due." Following this is a direction to the executors to invest the $11,000 to draw interest for the benefit of the annuity. Then follows a further direction that, if the annuity is not sufficient to furnish the donee a suitable and comfortable support, to take from the fund of $11,000 the amount necessary for that purpose. The court held that if the income from the fund was insufficient the amount should be made up from the estate. In what possible way is that case an authority here? There is an express direction to take enough from the fund to carry out the purpose of the annuity.

In Pierrepont v. Edwards, 25 N. Y. 128, it was stated that the annuity should be paid out of the income from the entire estate. The court held, that being insufficient, the estate might be resorted to upon the principle applied in Moore v. Alden, supra. In Morriss v. Garland, 78 Va. 215, the executors were directed to set apart $50,000 worth, at par value, of bank and other paying stocks and bonds paying at least six per cent. per annum, the proceeds to be paid to the wife. There was no limitation as to time or fund, and it was held to be a so-called "demonstrative" legacy, not limited to the securities set aside by the executors. Merritt v. Merritt, 43 N. J. Eq. 11, 10 Atl. 835, has no application; and in Morriss v. Garland, supra, the widow renounced the will, and the question was not squarely before the court.

In all of these cases no such provisions are found as are here presented. The facts are radically different. They establish, however, one principle, and that is this: The only office of the courts is to find out what the testator meant by his will, and by no means to make a new will. While these decisions are of value by way of comparison, and are an interesting part of the judicial history of

this subject, there are many others presenting a different view, notably Baker v. Baker, 6 H. L. Cas. 615; Addecott v. Addecott, 29 Beav. 460; Sheppard v. Sheppard, 32 Beav. 194; Booth v. Coulton, L. R. 5 Ch. App. 684; Forbes v. Richardson, 11 Hare, 354; Taylor v. Taylor, L. R. 17 Eq. Cas. 324; Irwin v. Wollpert, 128 Ill. 527, 21 N. E. 501; De Haven v. Sherman, 131 Ill. 115, 22 N. E. 711; Delaney v. Van Aulen, 84 N. Y. 16; Nudd v. Powers, 136 Mass. 273. In my opinion, the will should be held intact against the proposed encroachment upon either the principal of the trust fund or the undistributed balance of the general estate. The judgment should be affirmed.