## WILLIAM R. MERRIAM AND ANOTHER v. ROBERT II. MERRIAM AND OTHERS.[1]

### March 2, 1917.

### Nos. 20,121—(261).

**Trust — conveyance to trustee sustained.**

> Conceding that an assignment by intervener of her interest in the estate of her deceased husband was a conveyance from *cestui que trust* to trustee, and that the rules applicable to such transactions govern, the evidence, after the most careful scrutiny, satisfies the court that the intervener had full knowledge of the facts; that she knew what her rights were, and intended to convey her interest; that the transaction was in all respects a fair one; that the consideration paid was adequate, and the transaction to the advantage of intervener.

Action in the district court for Ramsey county by the trustees under the will of John L. Merriam, deceased, for an allowance of their ac-

[1]Reported in 161 N. W. 518.

counts. Lillian A. Coleman, formerly Lillian A. Merriam, filed a complaint in intervention and prayed for a decree of court setting aside the assignment referred to in the opinion and allotting to intervener her full distributive share of the trust funds as sole legatee, devisee and heir at law of John W. Merriam, deceased. The case was tried before Dickson, J., who found that intervener was not entitled to any relief, and that the assignment of her interest in the estate of John W. Merriam was made for an adequate consideration and that there was no fraud or concealment practiced upon her by anyone to procure the assignment. Intervener's motions for amended findings and for a new trial were denied. From the judgment entered pursuant to the order for judgment, intervener appealed. Affirmed.

*Stringer & Seymour,* for appellant.

*John F. Fitzpatrick* and *Ambrose Tighe,* for respondents.

BUNN, J.

In this action plaintiffs, as surviving trustees under the will of John L. Merriam, deceased, asked judgment distributing funds in their hands to the persons entitled to the same under the will and for other relief. The trust involved on this appeal is one created by the testator for the benefit of his widow, Mrs. John L. Merriam. Mrs. Merriam, who was one of the trustees as well as a beneficiary under this trust, died December 22, 1915. By the provisions of this trust Mrs. Merriam was to receive an annual income of $8,000 during her life, and at her death the remainder of the trust fund was to be divided in equal shares among the testator's five children, William R. Merriam, John W. Merriam, Robert H. Merriam, Alanson Wilder Merriam, and Jennie E. McKenna. The controversy in this case is over the share of John W. Merriam who died in June, 1899. The complaint alleged that he left a widow, Lillian A. Merriam, and a large amount of debts; that his estate was at all times insolvent, all the assets being distributed to his creditors by the final decree entered in April, 1905, and being sufficient to pay a dividend of 37.82 per cent upon the face of the claims proved and allowed; that the decree further provided that "said widow is entitled to take and hold any and all rest and residue of said estate;" that thereafter Helen M. Merriam purchased all the claims against the estate of John W. Merriam, and

on November 17, 1905, Lillian A. Merriam, by written assignment, assigned to Helen M. Merriam all her right, title and interest in and to the estate of said John W. Merriam and also to his body; that thereafter Helen M. Merriam for a consideration of $1,000 paid to her, sold and transferred her interest in the estate and the claims of creditors so purchased by her to William R. Merriam, Robert H. Merriam and Jennie E. McKenna.

Lillian A. Coleman, who was Lillian A. Merriam at the time of her assignment to Helen M. Merriam of her interest·in her deceased husband's estate, was not made a party to the action, but she filed a complaint in intervention, in which she asked for judgment setting aside the assignment as procured by fraud, and allotting to her as the sole legatee, devisee and heir at law of John W. Merriam, his share of the trust fund which the action sought to have distributed. This complaint alleged fraud in procuring the assignment. Its allegations in this regard were met by specific denials in the answer of plaintiffs to the complaint in intervention. The issue thus framed was tried before the court without a jury. The finding was that the assignment was not procured from the intervener by fraud, that there was no misrepresentation or concealment, and that there was an adequate consideration. As a conclusion of law it was determined that the intervener was entitled to no relief. A motion for amended findings was denied, as was a motion for a new trial. Judgment was entered on the decision, and from this judgment intervener prosecuted this appeal.

The only question necessary to be decided is whether the finding that there was no fraud in procuring from intervener the assignment of her interest in the estate of John W. Merriam, is sustained by the evidence. Counsel for the intervener frankly concedes that the evidence sustains this finding unless it be held, as they claim it should be held, that the relations between the parties to the transaction, Helen M. Merriam and Westcott W. Price, on the one hand, and the intervener on the other, were relations of trust and confidence, so that the transaction must be viewed as one between persons holding to each other the relation of trustee and *cestui que trust.*

Conceding that the assignment by intervener to Helen M. Merriam was a conveyance from *cestui que trust* to trustee, the rule, as stated by

counsel for the intervener, is that it will be sustained only after the most careful scrutiny and when the court is satisfied that the *cestui que trust,* with full knowledge of the facts, intended to convey his interest; that the transaction was in all respects fair; that the consideration was adequate and that the transaction was to the advantage of the *cestui que trust,* rather than to his disadvantage. We will briefly view the evidence to find if it meets the requirements stated.

First as to intervener's knowledge of her rights and her intention to sell to Mrs. Merriam her interest in the trust fund. It is claimed that she could not have intended to sell this interest because she never knew she had it. After the death of John W. Merriam, his widow instituted the proceedings to probate his estate. She employed James C. Michael, now a judge of the district court, who was appointed administrator. There can be hardly a doubt that he was thoroughly familiar with the trust created by the will of John L. Merriam, and knew that John W. Merriam was a beneficiary, and that Lillian A. Merriam, as his widow and sole heir, would take his interest if anything was left after his creditors were paid. But he doubtless realized that the present value of this interest was uncertain, and that if it could be sold the proceeds would all go to the creditors. This interest was not listed among the assets of the estate, but this could not have been due to lack of knowledge that it existed. It was doubtless due to a full appreciation of the undoubted fact that it would be difficult if not impossible to realize anything by a sale of the interest, and that anything that was realized would be swallowed up by creditors. It is quite inconceivable that intervener, in her effort to get something out of her husband's estate, did not learn of his interest in the trust fund. The terms of the trust were almost a matter of common knowledge at the time, as the various cases in this court involving them bear witness. Merriam v. Wagener, 74 Minn. 215, 77 N. W. 44; Merriam v. Merriam, 80 Minn. 254, 83 N. W. 162. The administrator of the John W. Merriam estate was a party to the last named case, and in the first, decided in 1898, it was held that the sons of John L. Merriam had vested interests in the trust fund.

The administrator was appointed on the petition of intervener in 1899, shortly after the death of her husband. The proceedings went on until April 18, 1905, when the final decree was entered. The only property

of the estate, aside from its interest in the trust fund, was a bequest of $10,000 made to John W. Merriam by A. H. Wilder. This, as stated, all went to the creditors of deceased. It is entirely plain that, at the time of the final decree, the fact was that there was no property whatever belonging to John W. Merriam's estate, save and except what might come from his interest in the trust fund after the death of Mrs. Merriam. Intervener knew this fact, and had not the slightest ground for thinking that she had anything coming from her husband's estate unless it was his interest in the trust fund. This is significant when we come to consider the correspondence that resulted in the assignment, and the language of the assignment.

Soon after the entry of the final decree in her husband's estate, intervener began to write Mrs. Merriam for money. Mr. Price, one of the trustees, as well as agent for Mrs. Merriam, answered the first letter of intervener on June 25, 1905, saying that Mrs. Merriam was not in the city, and that, when he heard from her concerning intervener's request, he would write further. July 5, 1905, he wrote intervener that he had heard from Mrs. Merriam who informed him that it would be impossible to grant her request to send her $300, but that he believed that if intervener could see her way clear to grant the request of Mrs. Merriam, made some months before, to allow her to bring John's remains home for burial, Mrs. Merriam would arrange to send her the $300. Intervener answered this letter, dwelling upon her need of money, her failure to get anything from the administrator, and proposing to send John's remains to St. Paul if Mrs. Merriam would give her $1,225, which was the amount needed to redeem her furniture and jewels from a mortgage. Mr. Price replied to this letter August 14, 1905, writing that he had corresponded with Mrs. Merriam, and that she regretted she could not for a moment consider intervener's proposition, but that he, Price, believed that Mrs. Merriam might be willing to give $500. August 29 intervener wrote Price that she would accept the $500, and take or send John's remains to St. Paul. Price then wrote that he would submit the matter to Mrs. Merriam, and September 13, 1905, wrote that Mrs. Merriam had authorized him to accept the proposition to pay intervener $500 in consideration of her consenting to the removal of John's remains to St. Paul, but that she was then too ill to arrange details. After a letter from intervener on Septem-

ber 26 expressing her gratitude to Price and her sorrow at the illness of Mrs. Merriam, Mr. Price wrote that Mrs. Merriam had improved so as to be able to sign the agreement, and inclosed two copies thereof for intervener's signature. The agreement inclosed evidently contained a provision by which intervener released her rights in her husband's estate, and on October 22, 1905, intervener wrote a letter that clearly indicates to our mind her complete knowledge of her rights. She wrote that she saw that by signing the agreement she was "signing away all my rights as his widow to his estate," that she was not willing to do that, considering she had not received any money from John's people since his death, but that, if Mrs. Merriam would give her $1,000, "I will sign away all my right and will never ask for another thing." Two sentences in this letter are of peculiar significance. "I consider what I ask is small considering I sign away all my right." "I also have a copy of John's father's will." November 6, 1905, Price wrote intervener that Mrs. Merriam had consented to accept her last proposition, and inclosed the agreement for her signature. November 17 intervener replied, inclosing the agreement executed and acknowledged by her as requested. This is the agreement that intervener asks to have set aside in this action on the ground of fraud on the part of Mrs. Merriam and Price. The $1,000 was paid, $500 at the time and $500 later. The langauge of the assignment is: "In consideration of the sum of One Thousand Dollars * * * I, the widow of John W. Merriam, deceased, hereby assign, transfer, quitclaim and set over to said Helen M. Merriam all my right, title and interest of every name and nature in and to the estate of said John W. Merriam, my late husband."

It appears that the $1,000 paid to intervener was furnished by William R. Merriam, Robert H. Merriam and Jennie E. McKenna, and that Helen M. Merriam assigned to them the interest in the estate of John W. Merriam acquired from the intervener, and also the claims of creditors of the estate which she had purchased.

We are satisfied from the evidence, after the most careful scrutiny, that intervener had full knowledge of the facts, that she knew what her rights were, and intended to convey her interest in the trust fund.

We further think that the transaction was in all respects a fair one,

that there was no attempt to obtain the advantage of intervener, no fraudulent representations, no concealment of the facts.

As to the adequacy of the consideration, it seems to us that it was more than intervener's interest in the trust fund was worth at the time. We need only refer to the fact that the present value 'of this interest was most uncertain, owing to the uncertainty as to how long Mrs. Merriam might live, and her right to use the principal of the fund to make up her annual allowance, and to the fact that intervener, because of the rights of creditors, would have received nothing had she not assigned her interest.

The same considerations show plainly that the transaction was distinctly to the advantage of the intervener, not to her disadvantage.

Our conclusion is that the evidence amply sustains the decision of the trial court against the claim of intervener that the assignment should be set aside. We have not thought it necessary to discuss other features of this case.

Judgment affirmed.